Kotkoskie *v.* Northwestern Mining and Exchange Co. of Erie, Pa., Appellant.

Argued April 11, 1932.

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*Elmer D. Adair,* and with him *H. J. Connolly,* for appellant.

*Lisle D. McCall,* for appellee.

OPINION BY PARKER, J., July 14, 1932:

The widow of Anthony Kotkoskie, claimant, sought compensation for the death of her husband. The referee found in her favor, which award was affirmed by the board and the court below.

The husband and his "buddy" were engaged in mining coal for the defendant company on August 6, 1930. Deceased was 49 years of age, and, when on that date he left home for work, was apparently in good health, never having been under the care of a physician. Coal having been shot down ready to remove, the deceased and his "buddy" loaded seven cars, six of which they pushed from the face of the coal to the gathering track, a distance of about forty feet. These two men started to push out the seventh car when it became wedged against the roof. An effort was made by them to disengage the car and the surviving witness

called on the deceased to help. He received no reply, and, on looking, found that the deceased had slumped down close to the car. He died within a few moments without recovering consciousness, and a post mortem examination revealed a burst aorta.

The referee reported inter alia as follows: "An autopsy was held, cause of death being given as internal hemorrhage, rupture of blood vessel; the left lung was completely collapsed. The heart was normal. Deceased suffered no ill effects from helping in pushing the six cars. The seventh car became wedged and could not be moved. The car weighed one and one-half tons and was overloaded. Decedent's assistant did not pull very hard. There is, of course, no testimony to show the effort rendered by deceased. If the fellow employee exercised but little energy, it is a fair inference that deceased found it necessary to use greater force. Consequently, your referee finds as a fact that the extra effort put forth by the deceased in attempting to move the lodged car of coal, caused a rupture of a blood vessel, in turn causing an internal hemorrhage resulting in death."

The appellant contends that (1) the record does not contain any competent evidence to support the finding of accidental injury and (2) does not contain any competent evidence to support the conclusion that death resulted from an accidental injury. In support of these positions, it argues that there is no evidence from which it could be found or inferred that the deceased over-exerted himself and that it does not appear from the evidence that death was not due to the natural progress of a pre-existing disease without the intervention of any unusual happening or accident.

There is not any doubtful question of law arising in this case, for the law is well settled. "If death comes, during the course of employment, in an ordinary

way, natural to the progress of the disease with which one is afflicted, and with which he was smitten before the accident, there can be no recovery; but, if the demise is brought about by an injury due to some mishap, or accident, happening during the course of his employment, the fact that the deceased had a chronic ailment which rendered him more susceptible to such injury than an ordinary person would be, will not defeat the right to compensation:'' Clark v. Lehigh Valley C. Co., 264 Pa. 529, 533.

The ''buddy,'' Joseph Gudalis, testified that they had shoveled out six cars, when they loaded the seventh and started to move it, without much effort. His language is as follows: ''Why I was on the left and he was on the right and we pushed it, we walking and pushing. We were both inside the track. We just come to that car, just from the face, maybe nine feet or maybe ten feet from the face, no measure it, but was too much coal on top and it stuck on the coal. Well, we push and pull back and we no can. Q. You mean to say that you pushed this car up until the coal, which was piled on top of it, jammed against the roof, is that it? A. Yes, but then we had to pull it back. Q. Now Joe, when the car jammed against the roof, that is, the coal which was on top of the car, did the car stick? A. Oh yes, it stuck, it no can go. Q. You could not push it through? A. No. Q. Did you try to push it through? A. No, we try to pull it back.'' The witness then described how he pushed and, from this, it is argued that the witness means to say that he alone pushed and pulled. We are unable to agree with this conclusion. The witness, although using broken English, indicated very clearly that both men were endeavoring to move an overloaded car. Exclusive of the load, the car weighed fifteen hundred pounds, was 66 inches wide, 10 feet in length and 28½ inches high and was wedged

against the roof. Not only is it a fair inference of fact, but the only reasonable inference to be drawn from all the testimony that the deceased exerted more than the usual amount of energy in assisting in pulling and pushing such a load. "The cause of death may be shown by circumstances:" Riley v. Carnegie Steel Co., 276 Pa. 82, 86; Flucker v. Carnegie Steel Co., 263 Pa. 113. The referee, approved by the board, has found the necessary facts from competent evidence.

Dr. Houck, a physician called on behalf of the claimant, states, in his professional opinion, "That the most probable cause of this man's death would have been apoplexy, or hemorrhage in the brain, dilation of the heart or a rupture of some large blood vessel elsewhere. Q. Would you say that such exertion was the most probable cause of the bursting of these blood vessels you have testified to? A. Exertion would increase the blood pressure, and under the circumstances, be a probable cause of his death."

Dr. Bowser, who performed the autopsy, was called as an expert witness by the defendant and testified as follows: "Q. Then, if Anthony Kotkoskie, immediately before he collapsed in the mine, was expending work and labor in attempting to move this mine car, that would create an increase in blood pressure, would it not? A. Yes sir. Q. Then, in your professional opinion, is it not a fact that that labor he was then performing would be the immediate and most probable cause of his death? A. Yes, it would, if you say it that way."

Bearing in mind that the expert called by the claimant did not have the benefit of a post mortem examination and that the testimony of the expert called by the defendant company clearly established the immediate cause of death to have been a burst aorta, not only was there ample evidence to support the findings of the referee but it is difficult to see how he

could have come to any other conclusion. The conclusion reached by the referee is in harmony with a large number of cases heretofore decided. A number of them are collected in Watkins v. Pittsburgh Coal Co., 278 Pa. 463, and Murphy v. P. & R. C. & I. Co., 98 Pa. Superior Ct. 108, 110.

The judgment is affirmed.