Hercheck *v.* Donahoe's Inc. et al., Appellants.

Argued April 30, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*James J. Burns, Jr.,* of *Willmann, Burns & Sack,* for appellants.

*Murray J. Jordan,* for appellee.

OPINION BY CUNNINGHAM, J., July 18, 1935:

An uncontroverted fact in this workmen's compensation case is that when claimant was examined by Dr. J. A. Martin, acting for the employer, on June 14, 1933, he had a "complete indirect inguinal hernia;" it was reducible, and, in the opinion of the physician, was "of an old origin."

It was contended, however, on behalf of claimant, that the hernia had been precipitated by a "sudden effort or severe strain" which occurred when claimant, in the course of his employment as a dish washer at a store conducted by Donahoe's, Inc., attempted, about five o'clock on the afternoon of June 10, 1933, to lift a large pot filled with water out of a sink.

The underlying and controlling question in this case is whether the "manifestations," prescribed by the hernia amendment of April 13, 1927, P. L. 186, (further amending Section 306 of our Workmen's Compensation Act of June 2, 1915, P. L. 736), as necessary to rebut the statutory presumption that hernia is a non-compensable "physical weakness or ailment," were "communicated to the employer, or a representative of the employer, within forty-eight hours after the occurrence of the accident."

The referee found that the first notice the employer had of the alleged accidental injury was when its physician made the above mentioned examination four days after the time claimant asserted he had suffered the strain. This finding was affirmed by the board and compensation was disallowed upon the ground that claimant had failed to meet the burden imposed upon him by the amendment.

Upon claimant's appeal to the court below, that tribunal reviewed and weighed the evidence before the referee, accepted the statements of the claimant as more credible than those of his immediate superior, found "that the claimant did make the required report," set aside the findings of the compensation authorities upon this feature of the case, and directed that the record be returned to the board "for the purpose of determining the question of fact as to whether or not the hernia was caused or aggravated by the accident of June 10, 1933." The present appeal is by the employer and its insurance carrier from that order.

It has been repeatedly held that the revisory powers of the common pleas, and of this court, are limited to the determination of the question whether there is competent evidence to support the findings of fact of the compensation authorities and whether the law has been properly applied to them.

Aside, however, from the lack of authority in the court below to do what was done in this case, we are unable to find any evidence upon the record to support the statement of the court below that "the claimant reported an untoward incident of some kind on June 10, 1923, the date of the alleged accident."

The findings of the referee upon this phase of the case read: "In doing this [lifting the pot on June 10, 1933,] he strained himself and suffered immediate pain in the stomach and across the abdomen on the left side of the body, the sensation which he described was as if something had fallen down in his abdomen. It was almost quitting time, and he immediately stopped working and sat down for about five minutes. He then changed clothes and went home. As he was leaving his place of employment he told the chef, who was his immediate superior, that he did not know if he would be out the following Monday because his back hurt him. On the following Wednesday he returned for his pay,

and on that day told the chef that he had injured himself the Saturday before, which was June 10th. The chef then sent him to the office, where an accident report was made and the claimant was sent to a physician. This was the first notice the employer had of any accidental injury, which was a period of four days following the alleged strain." These findings are supported by competent evidence and were adopted by the board.

The only conflict in the evidence is between certain statements made by the claimant and the testimony of the chef. The court below, in its opinion, directs attention to, and bases its conclusion with respect to notice having been given upon, the following testimony by claimant: "A. I told Mr. Chef I had a pain in my chest; lifting a large pot I hurt myself and I can't continue working, I will have to go home; I will see how I feel on Monday and if I will be able to come back, I don't know. ...... Q. Did you show him where this pain was or where you had been injured? A. Yes, I showed him with my hand the pain that I had in my chest; and also that something fell down in my abdomen."

It was specifically denied by Andred Nickels, the chef, that claimant made any communication to him on June 10th with respect to hurting himself while lifting the pot, or as to any pain in his chest, or any sensation of something having fallen down in his abdomen. Excerpts from the testimony of the chef read: "Q. Do you remember John Hercheck talking to you on Saturday, June 10th. A. Yes, sir. Q. About five P. M.? A. Yes, sir. Q. At that time what did he say to you? What did he tell you? A. He told me before he left, he says 'I might not be in Monday.' I asked him why; he said his back hurts him. So I told him to get some alcohol and have his wife rub his back good so he may be able to be back on Monday. ...... Q. Did he say

anything to you at that time about having strained himself? A. He didn't mention nothing else but that his back hurts him. That's all I know. Q. Did Mr. Hercheck at that time tell you that something had fallen down in his abdomen? A. That's all he told me, that his back hurt. That's all I know; that's all he mentioned. Q. Then is it a fact that he did not tell you about something falling down in his abdomen? A. That's a fact. Q. Did he tell you anything at that time about his chest hurting him? A. Not that time, but on Wednesday when he came back. Q. I mean on Saturday, the 10th? A. That's all he mentioned, his back. Q. Did he tell you that he had had an accident on Saturday at five o'clock? A. No, sir, he didn't. That's all he mentioned, just his back. That's all he mentioned. Otherwise I would have attended to him. I thought he might have a cold, or something, in his back. Q. Then on Saturday he didn't even tell you about the fact he was lifting a pot? A. No, sir. That's all he said to me, about his back hurting him; and that's all; that he might not be able to be back on Monday. Q. Now when was the first time you knew that John Hercheck claimed to have hurt himself while lifting a pot? A. That was on Wednesday afternoon, when he came back for his money."

It was the function of the compensation authorities to pass upon the credibility of these witnesses and they had a right to accept the testimony of the chef as against that of the claimant. Even if the statements of the claimant be accepted at their full face value, they do not amount to the reporting of any "untoward incident," as held by the court below, or to the communication of any of the "manifestations" specified in the hernia amendment.

Neither of the cases cited and relied upon by the court below—Romesburg v. Gallatin Market et al., 114 Pa. Superior Ct. 388, 174 A. 805, and Rouleau v. P.

Hughes & Son et al., 100 Pa. Superior Ct. 390,—sustains its position. What was held in the Romesburg case was that when an employee, immediately upon suffering a sharp pain in the inguinal region following a strain, reported what had occurred to his employer and was sent by the employer to the office of a designated physician, the discovery by the physician of a partially descended hernia amounted to notice to the employer through his representative the physician. We there said, "In sending the claimant to a certain doctor, defendant selected him as his agent or representative and discovery of the partial descent by the doctor was such a communication to the representative of the employer as fully complied with the act." In that case the employer had notice, through his representative, within a few hours after the happening of the accident. Here, the medical representative of the employer did not see claimant until the fourth day after the alleged strain.

In the Rouleau case, the claimant underwent a severe strain while moving a piano and experienced pain in the abdominal region. Within half an hour after he was stricken, he notified his immediate superior and several hours later exhibited to him the protrusion of the hernia.

There is no similarity between the facts in the cases cited and the facts appearing from the evidence in the case at bar. Here, even if we accept as verity every statement made by the claimant, he has failed to meet the burden which the legislature has said he must carry in order to obtain compensation for the disability incident to the hernia from which he is suffering. Having reached this conclusion upon that feature of the case, it is unnecessary to consider the other matters discussed in the briefs.

The order is reversed and the record is remitted to the end that judgment may be entered in favor of the defendants.