## Nolder v. Serafini Construction Co., Inc., et al.

*Roland S. Grubb,* for claimant.
*W. Perry Tyson* and *Harvey B. Lutz,* for defendants.

HARVEY, J., February 9, 1942. — Claimant was awarded compensation by the Workmen's Compensation Board, which sustained his appeal from the referee's order of disallowance thereof. Defendant, through its insurance carrier, has appealed from the action of the board.

The question raised by the exceptions is whether or not the hernia suffered by claimant, in the course of his employment by defendant, is compensable as an accidental injury, in the light of the essential proofs required by The Pennsylvania Workmen's Compensation Act of June 21, 1939, P. L. 520, sec. 1, adding paragraph (h) to article III, sec. 306, of The Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended.

Claimant and a fellow-worker, one George H. Sigle, testified to the circumstances of the injury. Defendant offered no evidence other than a written statement, made prior to his testimony, by the witness Sigle, and relied upon by defendant to affect the credibility of that witness. The credibility of witnesses is for the compensation authorities: Hercheck v. Donahoe's, Inc., et al., 119 Pa. Superior Ct. 501, 505. Any reliance of the board upon the testimony of this witness may not be rejected by us. It is the exclusive function of the board to find facts and inferences therefrom, whether from direct or circumstantial evidence: Kirby v. Carnegie-Illinois Steel Corp., 145 Pa. Superior Ct. 121. The only duty devolving upon the court is to determine whether there was competent evidence to support the findings of fact and whether the law has been properly applied to the findings: Ferrante v. Ferrante et al., 123 Pa. Superior Ct. 74.

On July 3, 1940, claimant, a man 31 years of age, enjoying good health and without having experienced any symptoms of hernia, had been, since April of that year, and was employed by defendant, which was engaged in the business of road building. On that date,

claimant was working as a driver of a so-called batch-truck used for transporting sand, stone, and cement from a loading platform to the point of a highway construction project conducted by defendant. About 8 a.m., after the truck had been driven by claimant to the loading platform, he was engaged in his further duty of lifting one of the three empty cans, which were over a swivel in the truck, preparatory to the delivery of sand and stone from the loading bin into the truck. The weight of the can when empty does not appear.

Claimant was standing on the left side of the truck in the act of lifting the can, when (in his language) "I reached down into the first can, or down over the body and down inside, they work over a swivel, and I got the can up halfway and my foot slipped and that left the weight of the can go down on my side". His narrative of the occurrence continues:

"I dropped off the truck, stood there and held my side a little while, I thought maybe I strained a muscle or something, so I stayed there until the pain kind of eased and I went ahead and put the cans up and I took that load up and came back after the next one and I told Serafini I slipped and hurt my side". Joseph Serafini, a representative of defendant, was the individual thus informed. Serafini then told claimant that he had "better go to a doctor but if it wasn't bothering too much I should go ahead and he would see that somebody else lifted the cans, so I drove the truck that day". Claimant did no further work on that day other than to continue to drive the truck. About two hours after the occurrence he observed a lump on his right side in the region of the groin. That evening claimant again told Serafini of the occurrence and sought, but did not locate, Dr. Romeo R. D'Onofrio, a local physician. During that night while in bed he suffered pain "once in a while". On the following day, Dr. D'Onofrio told claimant to tell his employer he was ruptured and should go to the hospital. Claimant so

informed Serafini on July 5th and went to the hospital, where an operation was performed on the 6th.

Dr. D'Onofrio testified that when he made the examination on July 4th claimant had an inguinal hernia on the right side, with a "lump that was perfectly evident"; and that, from the examination and history of the case he received of claimant, the cause of the injury was the occurrence claimant recited to him. We are of opinion that from this testimony it plainly appears "that in his professional opinion the result in question came from the cause alleged": Elonis v. Lytle Coal Co., 134 Pa. Superior Ct. 264, 271. This is sufficient to establish the causal relation the board found.

Dr. Henry S. Barker, Jr., the operating surgeon, stated that claimant was suffering from a right inguinal hernia, with a protruding sac about the size of a hen's egg. He expressed his opinion that it was a recent hernia; and was "probably" caused by the injury claimant said he had suffered.

This recital shows, we think, that there was competent evidence from which the board properly inferred the fact that the hernia, in the words of The Workmen's Compensation Act of 1939, supra, "was at once precipitated by sudden effort or severe strain" in the act of the lifting of the can by claimant.

" 'Where the injury is wholly within the body, proof of the accidental cause often must rest upon circumstances attending it: . . . Particularly is this true of a hernia, an injury which often results from lifting a weight not in itself excessive, but done in such a manner as to produce undue strain. The posture of the individual while lifting, and not the weight, may determine the result. An injury so caused may be regarded as an unexpected or fortuitous event or happening. "It is not the lifting that constitutes the accident, but the strain or sprain resulting therefrom . . . An injury by accident may occur in the course of the nor-

mal duties of an employee and without overexertion, when a strain, sprain, or twist causes a break or sudden change in the physical structure or tissues of the body" . . .' " : Palermo v. North East Preserving Works, Inc., et al., 141 Pa. Superior Ct. 211, 214.

Furthermore, the inference may be clearly drawn (again quoting the words of The Workmen's Compensation Act of 1939) that "the descent of the hernia followed the cause without intervening time". The fact that claimant did not observe the hernia for some two hours after the occurrence does not detract from the validity of this inference, under the provisions of the Act of 1939, as it would not have so done under the provisions of the Act of April 13, 1927, P. L. 186, which added paragraph (g) to section 306 of The Workmen's Compensation Act of 1915: Romesburg v. Gallatin Market et al., 114 Pa. Superior Ct. 388.

The evidence is direct that "there was actual pain in the hernial region at the time of the descent". The remaining essential requirements of proof are that "the above manifestations were of such severity that the same were noticed at once by the claimant, necessitating immediate cessation of work, and communicated to the employer or representative of the employer within forty-eight hours after the occurrence of the accident": section 306 (h) of The Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended by the Act of June 21, 1939, P. L. 520.

There is circumstantial evidence that the descent, and direct evidence that the actual pain, were of such severity that they were noticed at once by claimant, and that those manifestations were communicated to a representative of the employer shortly after the occurrence and twice within 48 hours thereof. The injury required claimant at once to stop lifting the can, get off the truck, and stand holding his side until the pain abated, and if the word "cessation" is to be given its popular meaning (as we think it should), of a ceasing

or discontinuance, whether temporary or final, there was an "immediate cessation of work" necessitated by the injury, notwithstanding claimant thereafter resumed the work of completing his duties in the loading of the truck and for the balance of the day continued to drive the truck.

". . . undefined words used in the statute must be taken in their 'popular sense,' if such sense is 'not contradictory to the object and intention of the lawmakers' . . .": Carville v. A. F. Bornot & Co., 288 Pa. 104, 112.

The act is remedial, and it is the duty of the courts to construe it liberally, as respects claimant's right of compensation, having in mind the benevolent and humanitarian purposes of its enactment: Manley v. Lycoming Motors Corp., etc., 83 Pa. Superior Ct. 173.

It was said in Palermo v. North East Preserving Works, Inc., et al., supra (p. 213) :

"The provisions of the hernia amendment of 1927, supra, and even more so those of the 1939 amendment followed the theory presented and reported in *Bukeavich v. Glen Alden Coal Co.*, 10 W. C. B. 91, 11 Dept. Rep. 354. The evidence there indicated that a true traumatic hernia must be accompanied by the following conditions: (1) The descent of the hernia must immediately follow the cause; (2) there should be a severe pain in the hernial region; (3) there should be of [sic] such prostration that the employee is compelled to cease work immediately; (4) these symptoms must be [of] such severity as to be noticed within twenty-four hours of the accident; and (5) there would be such physical disturbance as to require attention of a physician within twenty-four hours".

The evidence in the instant case not only substantially complies with these rules of proof, but (if there be any substantive difference) with the essential requirements prescribed by the Act of 1939, supra, in their quantitative aspect.

The act declares that there shall be "incontrovertible proof". We construe this, in the light of its context, to

mean that the facts and the inferences therefrom, which establish the essential requirements of proof, must be shown by evidence that is so positive, clear, certain, and convincing to the mind of the board as to rebut the statutory presumption that the hernia was a physical weakness which developed gradually and was not the result of accidental injury. We believe the evidence to be of this quality.

We conclude that claimant has met the burden of proof, placed upon him by the statute, to establish that the hernia was the result of an accidental injury suffered by him in the course of his employment, and that it is compensable.

It follows that the exception to the board's findings of fact no. 8, whether such be viewed as findings of fact or of mixed law and fact, is untenable. The findings are sustained by sufficient competent evidence and are correct in the legal aspect. The exceptions to the conclusions of law of the board may not be sustained.

### Order

And now, February 9, 1942, the exceptions and the appeal are dismissed and the award of the Workmen's Compensation Board is affirmed.

Judgment is entered against Serafini Construction Company, Inc., defendant-employer, and Employers' Liability Assurance Corporation, Limited, insurance carrier, and in favor of:

Ira Martin Nolder, claimant, in the sum of $181.97, being the compensation payable at the rate of $18 per week for a period of 9 and 2/7 weeks, beginning seven days after July 5, 1940, or from and including July 12, 1940, until September 15, 1940, together with interest at the rate of six percent per annum on each of the weekly instalments from the dates such weekly instalments were respectively payable.

Dr. Henry S. Barker, Jr., in the sum of $105, being composed of the amount of $100 due him for surgical

services incurred by claimant within the statutory period, and the amount of $5 shown by the bill of costs filed by claimant and directed by the Workmen's Compensation Board to be paid by defendant.

Homeopathic Hospital of Chester County, in the sum of $87.50, being the amount due for hospital services incurred by claimant within the statutory period.

Dr. R. R. D'Onofrio, in the sum of $5.72, shown by the bill of costs filed by claimant and directed by the Workmen's Compensation Board to be paid by defendant.

George Sigle, in the sum of $1.92, shown by the bill of costs filed by claimant and directed by the Workmen's Compensation Board to be paid by defendant.