Forsythe *v.* John F. Casey Company et al.,
Appellants.

Argued April 13, 1944.  Before KELLER, P. J., BALD-
RIGE, RHODES, HIRT, KENWORTHEY, RENO and JAMES, JJ.

*Murray J. Jordan,* with him *Fred J. Jordan,* for appellants.

*Bresci R. P. Leonard,* for appellee.

OPINION BY KELLER, P. J., July 15, 1944:

This case has been complicated and greatly extended and delayed by certain misconceptions as to the issue involved and the party upon whom rested the burden of proof.

On or about January 5, 1937 the parties entered into a compensation agreement, under which the employer defendant and its insurance carrier agreed to pay the claimant, R. L. Forsythe, then fifty-eight years old, compensation at the rate of $15 per week—$90 being then due—for total disability resulting from accidental injuries sustained by him in the course of his employment. The compensation agreement was prepared by C. M. Carlton, a representative of the insurance carrier, at a time when claimant was confined to bed, and was signed by her on behalf of both employer and insurance carrier. It stated that claimant was employed as a mechanic; that the "place of accident" was "the plant"; the "date of accident" was "11-24-36." "Date disability began—11-24-36."

Paragraph 4 was as follows:

"Describe accident and resultant injury: Injured set out at 4 A. M. in zero weather to fix truck. Was lying on frosty fender fixing distributor when he got hot and cold flashes and his arm and leg became paralyzed. Frozen arm and leg, however, paralysis of both is temporary."

His average weekly earnings were fixed at $36.42.

This compensation agreement was forwarded to the

board and approved by it on February 17, 1937, and compensation was paid under it until April 12, 1937.

On that date the insurance carrier 'per A. J. Gleason', on behalf of the employer and itself, filed a petition to *terminate* the agreement on the ground that "This man's condition is not the result of alleged injury." To which the claimant filed an answer denying the averment in the petition, and alleging that he was still totally disabled from the accident.

On April 19, 1937, the insurance carrier, per R. J. Hegmann, D. F., on behalf of the employer and itself, filed a "supplement to termination petition filed April 12, 1937", in which it asked the board "to review said [compensation] agreement as provided in section 413 of the Workmen's Compensation Act of 1919"; and as ground for said petition alleged "that the said agreement was based upon the hereinafter stated mistake. The employee did not meet with an accident in the nature of a frozen arm and leg or any other injury. Any disability in the past or at present is not the result of an accident." In support of said allegation it stated: "Completed investigation, including opinion of expert physicians, disclosed that the agreement was based upon a mistake and it should be set aside."

To this, claimant on April 28, 1937 filed an answer formally denying the averments and allegations of the petition.

Both petitions were assigned by the board to the Pittsburgh office for hearing.

As to the first petition—the petition to terminate— the board stated (p. 288a) that this petition was dismissed by the referee on May 7, 1937. Although the record as certified to us fails to show such action, we accept the statement of the board as correct. As no appeal was taken from that action, it was probably deemed unnecessary to include it in this record.

The other or supplemental petition, viz., to review the

agreement on the ground of mistake in its execution, and the answer thereto, came to a hearing before Referee Jones on May 7, 1937, with the claimant present, but not represented by counsel.

It is necessary to consider the situation then existing —what the defendant employer and its insurance carrier were seeking to accomplish, and upon whom the burden of proof rested.

The execution of the compensation agreement, prepared by Miss Carlton, the agent of the insurance carrier, and signed by her on behalf of both the employer and the insurance carrier, amounted to a formal admission of the claimant's employment by the defendant, his injury by accident on November 24, 1936 while in said employment, as therein described, and his total disability as a result of said accident, entitling him to compensation at $15 a week under section 306(a) for an indefinite period not exceeding 500 weeks, nor a total of $6,500; and the agreement could be set aside under section 413 only by proof that it had been founded on a mistake either of law or of fact; and the burden of proof, by satisfactory evidence, was upon the party alleging the mistake: *Williams v. Baptist Church*, 123 Pa. Superior Ct. 136, 143, 144, 186 A. 168; and the petitioners recognized this by proceeding to open their case.

Unfortunately the referee misunderstood the situation and on July 16, 1937, after stating that the claimant had filed no answer—which was contrary to the fact—decided that the agreement was based on a mistake of fact, "and the claimant having failed to meet the burden of proof upon him to show that he sustained injuries by accident while in the course of his employment, which caused him to be totally disabled, he is not entitled to recover compensation"; and ordered that compensation payments under said agreement be terminated as of April 12, 1937.

The claimant, being then represented by counsel, appealed from the referee's fifth finding of fact and also from his conclusion of law that the agreement was based on a mistake of fact and that the burden of proof was upon him. At the same time he asked for a rehearing, or a hearing de novo, which the board, on June 29, 1938 granted and set aside the referee's findings of fact, conclusions of law and order of termination, and remanded the case to the referee for further hearing and determination, pointing out that "by the agreement it was admitted that the claimant was entitled to recover compensation" and that "the burden is upon the defendant to prove that a mistake existed at the time the agreement was made, as agreements are prima facie evidence of the facts, rights and obligations therein set forth."

Referee Curtis, to whom the case was assigned following Referee Jones' retirement from office, did not fully grasp the situation either, for he repeated Referee Jones' mistake of fact in stating that the claimant had not filed an answer to the petition; but after hearing the witnesses, including the physicians testifying for the defendant and the claimant, respectively, and the claimant himself, and an impartial medical expert summoned by him, he found as a fact, "that the claimant suffers from a right-sided hemiplegia, which renders him totally disabled and that said disability, which has continued total in character and extent since April 12, 1937, is directly attributable to accidental injury sustained on November 24, 1936." He made, inter alia, the following conclusion of law:

"Since the claimant has met the burden of proof upon him to show that his disability as a result of accidental injury still continues, he is entitled to a reinstatement of compensation under paragraph 2, section 413"—and ordered that compensation payments under said agreement be reinstated as of April 12, 1937.

This conclusion of law and the order of reinstatement were technically wrong in two respects:

(1) The claimant did not have the burden of proof as stated by the referee, and

(2) The agreement did not need reinstatement, for it automatically became of force and effect again as soon as the board set aside Referee Jones' findings of fact, conclusions of law, and order terminating it.

The correct conclusion would have been that the defendants had failed to meet the burden of proof of showing a mistake in the making of the agreement; and the correct order would have been to dismiss the petition.

The effect was practically the same, but we do not want the issues confused by a technically improper conclusion of law and an erroneous order.

On appeal to the board by the insurance carrier, which had intervened as a party defendant, the board carefully reviewed all the medical evidence, consuming about five pages of its opinion in so doing, and without making specific findings of fact, as requested by the appellant, was of the opinion that the evidence justified the finding that the disability of which the claimant suffers was due to his prolonged exposure [about 8 hours] to the extreme cold on the day in question; and that such long and continuous exposure to the extreme cold as was required on that day was out of the usual or ordinary course of his employment; it accordingly affirmed the referee's findings of fact, conclusion of law, and order.

Defendants appealed to the court of common pleas which ordered the case remanded to the board for the purpose of making specific findings of fact and for such other action as it deemed proper.

The board thereupon remitted the record to the referee for the purpose of making specific findings of fact.

The referee, thereupon, made specific findings of fact from the evidence in the record, without hearing addi-

tional testimony, this being done by agreement of the parties. It is a matter to be noted that Miss Carlton, who signed the agreement on behalf of the insurance carrier and the employer, did not testify as a witness nor show that she was not fully cognizant of all the material facts in the case at the time she prepared the agreement and signed it on behalf of her principals, which was at least seven weeks after the injury.

We do not deem it necessary to state these findings in detail. They are very full, complete and explicit. They are substantially summarized in the fourteenth and fifteenth findings: "Fourteenth. We find as a fact that the claimant suffers from a right-sided hemiplegia, as the result of an extraordinary exposure to cold, not usually or customarily happening in the course of his employment, and we further find as a fact that the injury is accidental within the meaning of Section 301 of the Workmen's Compensation Act.

"Fifteenth. We find as a fact, from the testimony adduced at the hearing, that the claimant suffers from a right-sided hemiplegia which renders him totally disabled, and that said disability, which has continued total in character and extent since April 12, 1937, is directly attributable to the accidental injury of November 24, 1936, and we further find as a fact that this degree of disability will continue for a period indeterminate in the future."

We may state, however, that the testimony of the claimant's two medical witnesses, in conjunction with the evidence of the impartial medical expert summoned by authority of the board, supports these findings.

The referee's first conclusion of law was: "Since the defendants have failed to meet the burden of proof upon them to show that the agreement was based upon mistake of fact they are not entitled to the prayer of their petition for review of compensation agreement."

The referee ordered that compensation payments be reinstated as of April 12, 1937.

The insurance carrier appealed from all of the referee's findings of fact except the first and second; and from his conclusions of law and order of reinstatement. The claimant filed a petition asking for additional findings of fact which his counsel thought would be material in proving that the prolonged exposure, nervous strain and excitement under which claimant worked for nearly eight hours on a stretch were causative factors in producing the hemiplegia which was the direct cause of the disability. The board, holding that the court, in remanding the record, had not passed upon the issue, but still retained jurisdiction of the case as a whole, sustained the findings of fact, conclusions of law and order of the referee and returned the whole record to the Court of Common Pleas of Allegheny County for such further disposition as the court deemed proper.

· The record remained nine months in the court below before it was argued; but on December 22, 1943 the court filed its opinion dismissing the defendants' appeal and ordering payment of compensation under the agreement at the rate of $15 per week from April 12, 1937 to continue until claimant's disability ceases or changes in extent, not to exceed the statutory limitations—with interest in accordance with section 410 of the act.

A misstatement of fact in the opinion was corrected by an amended order on January 5, 1944, and judgment was entered from which the defendants appealed to this court.

Our only function is to examine the record and see whether the evidence, viewed in any reasonable light, will sustain the action of the board, which, in effect, held that the prima facie right of the claimant to compensation established by the compensation agreement prepared and executed by the agent and representative of defendant's insurance carrier, acting on behalf of the

employer and itself, had not been overcome by the evidence produced by them when considered in connection with the testimony of the claimant's physicians and the impartial medical expert summoned by the referee with the authority of the board.

We are not going to encumber the record with a review or discussion of the medical testimony submitted by the defendants. As it was not accepted by the board, it is of little importance here on appeal. We have already pointed out that Miss Carlton was not called as a witness and that there is nothing in the record to show that she did not have full and complete knowledge of all the circumstances of the case, and of the attending physician's diagnosis of claimant's condition, when she prepared and executed the compensation agreement. His diagnosis, from the inception, was that the paralysis of the right leg and arm was due to a hemiplegia, which was causatively related to the prolonged exposure to severe cold weather and the heavy nervous strain under which he was working. Within two months after the execution of the agreement, an examination of claimant was made by one of defendants' medical witnesses, who gave it as his opinion that claimant's disability was not due to this prolonged exposure and was wholly dissociated from the facts relied on by claimant and his physicians and the impartial medical expert to explain the causal connection between the unusual and extraordinary occurrences that day in claimant's employment and the disability which, admittedly, has been total and continuous ever since.

If there is medical testimony in the record to sustain the causal relation between the two—and in our opinion there is—then, if accepted by the board, as it was, the basis for the accidental nature of the disability, as set forth in the compensation agreement—even though the claimant himself did not fully understand the exact connection between them—is sufficiently estab-

lished to sustain the action of the board in refusing to set aside the compensation agreement on the ground of mistake.

We find no attempt on the part of the court below to control the board in its fact-finding functions. Its action amounted to nothing more than a return of the record for the purpose of specifically finding the facts already implied in the conclusion of law and order made by the board.

The appeal is dismissed.