Holliday *v.* McGraw & Co. (et al., Appellant).

Argued April 11, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*John M. Reed,* for appellant.

*Jason Richardson,* for appellee.

OPINION BY DITHRICH, J., July 19, 1945:

Claimant in this workmen's compensation case suffered from an eye disease known as disseminated choroidoretinitis. The referee found that his eye condition was due to an injury caused by an accident. Because of the "divergence" of the medical testimony, the board on appeal from the referee's award remanded the case for the purpose of appointment of an impartial medical

expert to examine the claimant and the record, and for further hearing. The referee again found that the claimant lost the "industrial vision" of the right eye as a result of the injury and awarded compensation. The board found that the claimant's disability was neither brought about nor aggravated by the accident and dismissed the claim petition. On appeal to the County Court of Allegheny County, the action of the board was reversed and the award of the referee sustained.

Claimant was employed by defendant, F. H. McGraw & Co., as a carpenter. At the time of the accident complained of, he was assigned to work at the Irvin Steel Works of the Carnegie-Illinois Steel Corporation where his employer was constructing a loading platform. While he was straightening a form for a wall, he was struck in the eye by a steel tie wire. Dr. Daugherty, the physician employed by the steel corporation, recorded the accident as of March 28, 1941, and noted the injury as an abrasion of the cornea of the right eye. Dr. Daugherty then sent claimant to Dr. Kutscher, a specialist in diseases of the eye, who treated him intermittently and in August, 1941, made a diagnosis of disseminated choroidoretinitis. Dr. Buvinger, who testified for the defendant, examined the claimant in September, 1941, and made the same diagnosis. Dr. Curry, the impartial medical expert appointed by the board, examined him in January, 1942, and agreed with the diagnosis made by the two other eye specialists. There is, therefore, no question about the fact of the accident or the condition of the claimant's right eye.

The sole question raised on this appeal is whether the disseminated choroidoretinitis was the result of the injury caused by the accident. On this question, the board set aside the referee's findings of fact and in lieu thereof substituted the following findings: "Fourth: That the disability from which claimant is suffering in his right eye was neither brought about nor aggravated by the accident of March 28, 1941 ...... Sixth: That

the disability from which claimant is suffering is the result of an underlying systemic condition and is not the result of the accident of March 28, 1941." Reviewing the record, we find sufficient competent evidence to support these findings. Dr. Buvinger testified: "Q. Then what is your professional opinion, doctor, as to whether or not there is any connection between this condition of choroidoretinitis and the accident of March, 1941? A. I can see no connection myself. I believe that this disseminated choroidoretinitis simply developed here, and it might just as easily have developed in the other eye. I have seen thousands of eye injury cases, and I have never seen one that has been followed by disseminated choroidoretinitis ...... Q. Well, then, doctor, will you answer my question—What is your professional opinion as to whether or not there is any causal connection in this case between the disseminated choroidoretinitis and the accident of March, 1941? A. It is my opinion that the choroidoretinitis was not caused or aggravated by the accident." Dr. Curry, the impartial expert, testified: "Disseminated choroiditis which is causing a defective vision, usually affects both eyes and is due to some underlying systemic condition and is not a result of an injury ...... Q. The hemorrhage as a result of this injury had nothing to do then, in your opinion, with the choroiditis that followed? A. No, anything more than it might be a basis for some later trouble to have developed. Q. As a layman trying to understand your testimony, you go further and say that the disseminated choroiditis usually affects the vision of both eyes? A. Yes. Q. It doesn't follow then since it hasn't affected the left eye that the condition you found was the result of trauma? A. No. The disseminated choroidoretinitis I don't believe was the direct result of trauma. If it had been it would have occurred earlier."

Notwithstanding this testimony, the learned court below reversed the action of the board. Its reason for

so doing as stated in the opinion by HARKINS, J. is that: "...... there is no *credible* evidence to sustain the position of the Board ......" (Italics supplied) The credibility of witnesses is for the compensation authorities and not for the court: *Whiting v. Fibber and Mollie Tea Room,* 154 Pa. Super. 106, 35 A. 2d 598; *Bronkowski v. Colonial Colliery Co.,* 153 Pa. Super. 574, 34 A. 2d 837; *Hercheck v. Donahoe's,* 119 Pa. Super. 501, 180 A. 60.

The lower court, in effect, substituted its finding of fact for that of the board as follows: "The testimony of Dr. Curry, in our opinion, definitely establishes that the disseminated choroidoretinitis, which he describes as scars of the choroid, were caused by the injury received by claimant on March 28, 1941." The workmen's compensation board is the final fact-finding body and its findings of fact are conclusive if there is competent evidence to support them: *Krchmar v. Oakland Beach Co.,* 155 Pa. Super. 430, 38 A. 2d 710; *Forsythe v. John F. Casey Co.,* 155 Pa. Super. 185, 38 A. 2d 417; *Harmon v. Knoll,* 129 Pa. Super. 390, 195 A. 448.

The judgment is reversed and now entered for the defendant.