## Smith v. Mid-States Equipment Service, Inc.

144

Robert C. Duffy, for claimant.
Raymond J. Porreca, for defendants.

SPORKIN, J., February 16, 1962.—This is an appeal by defendants, Mid-States Equipment Service, Inc., employer, and New Amsterdam Casualty Company, insurance carrier, from the decision of the Workmen's Compensation Board affirming the award of the referee to the claimant, Erline Smith, widow of J. P. Older Smith, deceased.

Defendants argue that: (a) claimant failed to establish by legally competent evidence the causal connection between the accidental injury and the death of the deceased; and (b) the claimant is not entitled to an award because she is not the lawful surviving spouse of decedent.

The following pertinent facts appear in the record: on July 29, 1955, J. P. Older Smith was injured while working for defendant, Mid-States Equipment Service, Inc., sustaining a fractured femur of the left leg.

He was taken to St. Agnes Hospital, Philadelphia, where he was a patient until after August 1, 1955. When the fracture did not form a proper union, he was re-admitted to the hospital on June 11, 1956, and on June 14, 1956, corrective surgery was performed. He remained bedfast in the hospital until he died on September 15, 1956. Due to the suddenness of his death, the hospital authorities notified the office of the medical examiner for the City of Philadelphia to certify as to the cause of death. A post-mortem examination was made under the supervision of the Chief Medical Examiner, Dr. Joseph W. Spelman.

At the hearing before the referee, Dr. Spelman testified that: the immediate cause of death was a pulmonary infarction, which was due to a pulmonary embolism, which, in turn, was due to a fracture of the femur;[1] in his opinion there was a relationship between the cause of death and the fractured femur;[2] it is not unusual for an embolism to develop three months after an operation.[3]

Defendants called as their medical witness, Dr. Martin A. Blaker, an orthopedic surgeon, who testified that: he treated and operated upon decedent shortly after the accident, and also performed the second operation on June 14, 1956; he did not believe there was

---

[1] Dr. Spelman testified: (pp. 4 and 5, record) "Pulmonary infarction means death of the pulmonary tissue. That was the immediate cause of death. That was in turn due to pulmonary embolism which is a blood clot which originated presumably in the legs and broke off and traveled through the veins and entered the lungs and causes death of the lung tissue. This in turn, in my opinion, was due to the fracture of the left femur or the left thigh bone."

[2] Dr. Spelman stated: (p. 7, record) "I believe the embolism is related to his second admission and the corrective surgery which followed June 11th."

[3] Dr. Spelman's testimony: (p. 8, record) "We have seen repeatedly emboli developing in bedridden patients developing three months after the operation or injury."

a direct casual connection between the accident and the cause of death;[4] the reason for his conclusion was the lapse of a year and a half following the accident; and he considered it very unusual for a pulmonary infarction to occur so late as three months after surgery.

The Workmen's Compensation Board concluded that the medical testimony of Dr. Spelman was sufficient to establish a causal relationship between the accident and decedent's death. "The credibility of expert witnesses and the weight to be attached to their testimony are matters exclusively for the Board and in a conflict of opinions in the medical testimony it is for the Board to decide which conclusions it will adopt": Frick v. Pittsburgh School District, 167 Pa. Superior Ct. 431, 434, 435 (1950).

Where the "findings are supported by substantial and legally competent proof, they and the inferences to be drawn therefrom are as conclusive as the verdict of a jury." Id., page 435.

On appeal to common pleas, the function of the court is "limited to the determination of the question whether there is competent evidence to support the findings of fact of the compensation authorities and whether the law has been properly applied to them": Hercheck v. Donahoe's, Inc., 119 Pa. Superior Ct. 501, 503 (1935).

In the light of the record before us, we have concluded that the findings of the compensation authorities as to the causal relationship between the accident and the death of decedent are amply supported by legally competent evidence.

We now come to the remaining question raised by

---

[4] Dr. Blaker testified: (p. 8, record, 2nd session) "I do not believe there is a direct causal relationship which I would consider incontrovertible beyond any other influences which may have been present."

this appeal, namely: whether claimant is the lawful surviving spouse of decedent.

Claimant's case is predicated on a common law marriage. Claimant testified that: this marriage took place in Philadelphia in April of 1950, in the presence of one Major Benton and his wife, Martha; "He (decedent) just gave me the rings and he asked me if I would be his wife, and I said I would, and I asked him if he would be my husband, and he said he would." Claimant's testimony as to this ceremony was corroborated by both Mr. and Mrs. Benton.

"A common law marriage implies that both parties are able and willing to marry and that they solemnly enter into a contract of marriage, in the words of the present tense, for the purpose of establishing the immediate relation of husband and wife": Baker v. Mitchell, 143 Pa. Superior Ct. 50, 56 (1941).

Claimant also presented testimony (which was uncontradicted) to the effect that: following the marriage, claimant and decedent lived together as man and wife until his death; claimant gave birth to a daughter, who is known by decedent's surname; a home, an automobile and furniture were purchased by claimant and decedent jointly, as husband and wife.

While spurious claims of common law marriage frequently arise in compensation cases, particularly after the death of an employe, a careful review of the evidence in this case fully supports the conclusion of the board that a valid common law marriage had been established.

Defendants contend, however, that claimant could not have legally entered into a marriage relationship. with decedent because at that time she was already married to another. As to this, defendants presented one Noah Drummond, who testified as follows: On June 5, 1943, he and claimant were married in Wilmington, Delaware; they lived together until about

1945 or 1946 when they separated; on July 4, 1933, he married one Delzoria Wright in Virginia, with whom he lived until 1935, when a separation occurred; thereafter, his wife, Delzoria Wright Drummond, went to North Carolina and Drummond came to Philadelphia; without taking any steps to divorce his legal spouse, he married the claimant in 1943.

It is quite clear from this evidence that the marriage of Drummond with claimant was void. If, in fact, at the time when Drummond entered into the marriage with the claimant, his spouse, the former Delzoria Wright, was living, (and there is no evidence in this case to the contrary) Drummond was incapable of contracting the second marriage and it was therefore void: Thomas v. Thomas, 124 Pa. 646 (1889). There, in referring to the earlier cases of Kenley v. Kenley, 2 Yeates 207, and Heffner v. Heffner, 23 Pa. 104, it was stated (p. 655): "In the first case the Court said 'though the circumstances attending this case might exempt the defendant from the pains of bigamy, yet her first husband being in full life, and their marriage not annulled by any competent jurisdiction, the marriage was ipso facto void and null.' In the latter it was said: 'A man having a wife in full life is utterly powerless to make a valid contract of marriage, and his attempt to do so is utterly nugatory.' "

It is obvious from the case of Klaas v. Klaas, 14 Pa. Superior Ct. 550 (1900), that where the marriage is void, the innocent party is free to marry again inasmuch as she had no lawful husband living at the time of her marriage.

The following language in Sharpe v. Federal Window and Office Cleaning Co., 144 Pa. Superior Ct. 231, 243 (1941), is particularly applicable to the instant factual situation: "A man cannot at the same time legally have two wives; and one who has married once cannot lawfully marry again unless the first marriage

has been dissolved by absolute divorce or by death. And if a second marriage is entered into, it is void ab initio." See also Commonwealth v. White, 22 Pa. Superior Ct. 67, 68 (1903).

In view of the above, we conclude that defendants' second contention is without merit, and that the board was fully warranted in deciding that no legal impediment existed in the marriage contract between claimant and decedent, and that the referee was correct in his finding that claimant is the surviving spouse of decedent.

Accordingly, we entered the following:

### Order

The appeal of Mid-States Equipment Service, Inc., employer, and New Amsterdam Casualty Co., insurance carrier, is dismissed and the order of the Workmens' Compensation Board dated September 6, 1961 is affirmed.