Fehr, Appellant, *v.* Y.M.C.A., Pottsville.

Argued December 11, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

Donald D. Dolbin, with him Burke, Bowe, Dolbin & Heffner, for appellant.

E. C. Marianelli, for appellee.

OPINION BY WATKINS, J., June 12, 1963:

This is an appeal from the decision of the Court of Common Pleas of Schuylkill County sustaining a petition to terminate a compensation agreement. Katherine Fehr, the claimant-decedent, 74 years old, on December 26, 1958, was employed as a dormitory maid by the Y.M.C.A., of Pottsville, Pennsylvania. On that date, while performing her duties, she fell and came in contact with a heating radiator. An agreement No. 6,-980,299 was executed between the claimant, the defendant and its insurance carrier, Royal Indemnity Company, on January 26, 1959. The agreement was approved by the workmen's compensation authorities and compensation was paid under it from December 27, 1958 to September 19, 1959.

Under this agreement, drawn by the defendant's insurance carrier, the parties agreed and stipulated as follows, as to the description of the accident and nature of the injuries: "While cleaning rooms, making

beds, etc., she fell and struck a radiator. She received severe third degree burns of shoulder and forearm & stroke."

The petition to terminate was based on the second paragraph of §413 of the Workmen's Compensation Law, 77 PS §772, seeking termination of the agreement based on changed disability. The pertinent parts of the section read as follows: "The board, or referee designated by the board, may, at any time . . . terminate an original . . . agreement . . . upon petition filed by either party . . . upon proof that the disability of an injured employe has . . . finally ceased."

The burden is on the petitioner to prove the change in disability; in this case that the disability terminated entirely. There is nothing in this record concerning her condition prior to the accident nor is there anything in this record concerning the accident except that contained in the agreement. One of the doctors called by the defendant testified to a prior high blood pressure condition but there is nothing in the record to support this unless he obtained it from hospital records or assumed it or was able to so conclude from her condition at the time he examined her. Her family doctor who attended her at the time of the accident was not a witness. The hospital records discussed by the testifying doctors indicate she was being treated for her burns and for a cerebrovascular accident with a right hemiplegia. The record also shows that her condition grew steadily worse until her death on March 8, 1961 and that she was permanently and totally disabled from the time of the fall until her death. She was steadily employed as a maid or housekeeper up to the time of the accident as indicated by her salary of $20.76 per week, and the compensation paid at the rate of $18.70 per week.

Both doctors called by the defendant testified that there was no present disability resulting from the burns

as they were entirely healed and that the disability was due entirely to what Dr. Canfield described as "the cerebrovascular accident of December 26, 1958." The record further discloses that further deterioration of the cerebrovascular condition continued until her death on March 8, 1961. The referee found the following pertinent facts:

"5. . . . she was found to have . . . burns of the left arm and shoulder. She was also found to have suffered a right cerebral hemorrhage with accompanying right-sided paralysis . . .

"6. We find that claimant's burns to her left arm and shoulder completely healed and that she was fully recovered from the said burns on September 19, 1959 and, insofar as the burns were concerned, could have resumed her employment without further disability therefrom or impairment of earning power. That her inability to work on and after September 19, 1959 was due entirely to her systemic condition, namely, the effects of her cerebrovascular stroke and its resultant effects. It has been suggested for the record that claimant's death occurred on March 8, 1961 at the Schuylkill County Institutional Hospital at Schuylkill Haven, Pa. That claimant's cerebrovascular stroke and resultant effects thereof was not caused by her accidental burns to her left arm and shoulder."

The only evidence in this record to support finding of fact No. 6 is the testimony of Dr. Glenney. This is quite evident when you examine the testimony of Dr. John J. Canfield, whose testimony is summed up in the following questions and answers: "Q. Whether or not that total disability was in any way due to or the result of the original injury, the burns of December 26, 1958? A. I think her disability at that time was due entirely to her cerebral vascular accident of December 26, 1958. Q. Is what you call the cerebral vascular accident due to the fall and due to the burns? A. That,

I don't know. I can say that she was paralyzed as a result of her cerebral vascular accident."

The pertinent testimony of Dr. Glenney is as follows: "Of course, this lady had a cerebral hemorrhage, and *that's what caused her to fall* (Italics writer's), and the accident was she came in contact with the hot radiator." This testimony was objected to and although the referee sustained the objection it is clear from this record that Dr. Glenney's testimony was based on that improper statement of the facts in this case. He testified that her disability was due to "arteriosclerosis with hypertension, with the paralysis which resulted from this lesion which she developed in her brain." He was asked: "Q. As a matter of fact, do you know from the hospital records and your study of the case whether or not she had this condition prior to the time she fell? A. Well, she had high blood pressure before she fell, and she had disease of her arteries before she fell. Q. Then there was a pre-existing physical condition with which this claimant was afflicted? A. That's right. Q. And, as a matter of fact, Doctor, what connection did this physical condition and the cerebral condition have with reference to the burns and the process of recovery? A. Well, in my opinion there was no relationship between the two except *that when she had this attack of unconsciousness that she fell against the radiator* and thereby burned herself." (Italics writer's)

It is clear, therefore, from this record that without the testimony of Dr. Glenney, which was clearly based on an assumption of facts contrary to this record, that the petitioner in this case has failed to sustain the burden of proof required for the termination of the agreement, based on a change in disability. The application of the testimony of Dr. Glenney to support finding of fact No. 6 was an error of law.

The court below said: "This argument is based upon the *assumption* that the fall caused the stroke. The compensation agreement does not so state. It is silent as to whether the stroke preceded and caused the fall or whether the fall produced the stroke." We cannot agree with this statement as the agreement in clear and unequivocal language, after describing the accident to be, "while cleaning rooms, making beds, etc., she fell and struck a radiator", states that the nature of her injuries were that "she received severe third degree burns of shoulder and forearm & stroke." And most certainly under this language the petitioner who has the burden of proof, cannot assume that the stroke caused the fall as Dr. Glenney did in his testimony.

It can certainly be assumed that after the accident and prior to the execution of the agreement prepared by the insurance carrier, representatives of that carrier had made an investigation of the accident and had interviewed the claimant, her doctor, and any witnesses to the accident. The compensation agreement amounts to a formal admission by the employer and the insurance carrier of the claimant's employment; the happening of the accident; and the nature of the injuries resulting from the accident on the date stated while in that employment; and the total disability as a result of those injuries. *Forsythe v. J. F. Casey Co.,* 155 Pa. Superior Ct. 185, 38 A. 2d 417 (1944).

In order to set aside an existing agreement it is necessary under the second paragraph of §413, supra, under which this action was brought, to show a change in conditions as to disability as of the time of the hearing as the agreement itself is an admission by the petitioner that the disability at the time of the agreement was the result of the burns and the stroke. "Strictness of pleading however in Workmen's Compensation cases is not to be required. If claimant is entitled to relief under any section of the statute his petition will

be considered as filed under that section." *Selinsky v. New Shawmut Mining Co.,* 178 Pa. Superior Ct. 240, 242, 115 A. 2d 916 (1955). The same rule would apply to the employer. "The particular section of the statute under which a petition is filed is not material, provided that a proper ground for action under an appropriate section is proved." *Guzik v. Laurel Ridge Cons. Co.,* 196 Pa. Superior Ct. 586, 590, 176 A. 2d 183 (1961).

In order to set aside an existing agreement under the first paragraph of §413, supra, 77 PS §771, it must be proved by the petitioner, by evidence reasonably satisfactory, that a mistake was made at the time of the execution of the agreement. In the words of the statute: "The board, or a referee designated by the board, may, at any time, review and modify or set aside an original or supplemental agreement, upon petition filed by either party . . . if it be proved that such agreement was in any material respect incorrect." The contention of the petitioner is that the burns resulting from the fall were healed at the time of the hearing on the petition and that the disability that still existed was not causally connected to the accident. It is then the burden of the petitioner to prove that, in fact, the fall against the radiator which admittedly caused the severe burns, despite the trauma, and the emotional shock to this woman of seventy-four years of age, did not cause or contribute to the resulting "right cerebral hemorrhage with accompanying right-sided paralysis", and that the admission by the petitioner that the fall did cause this disability was due to a mistake, and incorrect.

There have been a number of cases where external force or trauma cause injury to the body affecting the heart that have been held to be compensable. *Yodis v. Phila. & Reading C. & I. Co.,* 269 Pa. 586, 113 A. 73 (1921). In *Hornetz v. Phila. & Reading C. & I. Co.,* 277 Pa. 40, 120 A. 662 (1923), a claimant was held to

be entitled to compensation where he suffered a fractured finger that necessitated an operation and while under anaesthesia suffered an acute dilation of the heart and died. Our case falls within that line of cases where there is no question that an accident occurred and the question is whether there is causal connection between the accident and the disability. *Kotkoskie v. N. W. Mine Co.*, 105 Pa. Superior Ct. 480, 161 A. 480 (1932). See also: *Nelson v. Boro. of Greenville*, 181 Pa. Superior Ct. 488, 124 A. 2d 675 (1956). "If death comes, during the course of employment, in an ordinary way, natural to the progress of a disease with which one is afflicted, and with which he was smitten before the accident, there can be no recovery (McCauley v. Imperial Co., supra, 327; Lane v. Horn & Hardart Co., supra, 333) ; but if the demise is brought about by an injury due to some mishap, or accident, happening during the course of his employment, the fact that deceased had a chronic ailment which rendered him more susceptible to such injury than an ordinary person would be, will not defeat the right to compensation." *Clark v. Lehigh Valley C. Co.*, 264 Pa. 529, 533, 107 A. 858 (1919). See also: Discussion and collection of cases in Vol. 21 Pittsburgh Law Review 445.

It is clear from a careful reading of the medical testimony that the finding of fact No. 6 upon which this case turns, is not supported by any evidence. Dr. Glenney's opinion was based on facts contrary to the record and the compensation authorities capriciously disregarded entirely the admission by the petitioner of the nature of the injuries resulting from the accident and stipulated in the agreement. The petitioner has failed in the burden of proof that the admission was a mistake and that there was no causation between the fall against the radiator and the disability or, that, in fact, the unconsciousness occurred prior to the fall

and was the cause of the fall. The referee made no finding as to a mistake or in what material respect the agreement was incorrect.

" 'True, a claimant for compensation must prove all facts essential to a recovery by a preponderance of competent testimony but that rule does not apply where the employer or insurance carrier desires to terminate an agreement. Then it is one seeking to change the status created by the parties themselves who must assume the burden of proof, as the compensation agreement is prima facie evidence of a compensable accident' . . . and the burden of proof is on the petitioner to establish the right to have the agreement or final receipt set aside by evidence reasonably satisfactory that a mistake has been made." *Williams v. Baptist Church,* 123 Pa. Superior Ct. 136, 142, 143, 186 A. 168 (1936). The mistake of fact or law contemplated is a condition existing when the agreement was executed. *Patulonis v. Locust Mountain Coal Co.,* 160 Pa. Superior Ct. 401, 51 A. 2d 352 (1947).

The court below also found that there was another reason for the dismissal of the appeal from the board. *"There is no proper party appellant before us.* The appeal purports upon its face to be an appeal by a dead person. And in signing the notice of appeal, counsel described himself as 'Attorney for Claimant (Deceased)'."

President Judge CURRAN, of the court below, although concurring with the major question involved, disagreed that there wasn't a proper party appellant. We have before us a motion to quash this appeal based on the same contention. The claimant died during the course of the proceedings below and the appeal to this Court was taken by "Estate of Katherine Fehr" and a suggestion of death was filed accompanied by a short certificate evidencing the authority of Annie Edwards, as administratrix of the Estate of Katherine Fehr.

Article IV, §410, Act of June 2, 1915, P. L. 736, as amended, 77 PS §751, states in part as follows: "In case any claimant shall die before the final adjudication of his claim, the amount of compensation due such claimant to the date of death shall be paid to the dependents entitled to compensation, or, if there be no dependents, then to the estate of the decedent." Thus the statute clearly sets forth those parties in interest in their order upon the death of the claimant and obviates the necessity of any costly legal proceeding to bring a new party on the record.

The technical rules of procedure are relaxed in workmen's compensation proceedings and the record can be amended at any time during the proceedings to indicate who should receive the compensation found to be due. As President Judge CURRAN said: "I think it was the intent of the legislature to obviate the necessity of further costs or legal proceedings in a compensation case, in keeping with the humane provisions of the legislation." *Troxel v. Troxel Ins. Agency, Inc.,* 156 Pa. Superior Ct. 402, 40 A. 2d 862 (1945). See also: The Fiduciaries Act of 1949, 20 PS §320.602 and Rule 2352 of the Pa. Rules of Civil Procedure. Petition to quash is dismissed.

This is not the case of the reviewing court weighing conflicting evidence and arriving at a different conclusion than the compensation authorities. Neither is it centered around the sufficiency of the evidence or the credibility of witnesses but rather that there is no competent evidence to overcome the presumption created by the agreement and to support the finding that terminated it. *Anderson v. Baxter,* 285 Pa. 443, 132 A. 358 (1926). Ordinarily the question of proximate cause is one of fact but where, as here, the accident and injuries have been admitted by the defendants in the agreement and there is no evidence presented to prove the agreement incorrect or mistakenly executed, it then

becomes a question of law. *Jowett v. Pa. Power Company*, 383 Pa. 330, 338, 118 A. 2d 452 (1955).

The order of the court below dismissing the appeal and affirming the decision of the Workmen's Compensation Board is reversed and the decision of the Workmen's Compensation Board terminating the agreement is set aside.

MONTGOMERY, J., concurs in the result.

WOODSIDE, J., dissents.