## ST. MARY'S HOME OF ERIE, Petitioner,

v.

## WORKMEN'S COMPENSATION APPEAL BOARD (STADTMILLER), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 2, 1996.

Decided Oct. 1, 1996.

Peter A. Pentz, for Petitioner.

Gary L. Bilotta, for Respondent.

Before FRIEDMAN and KELLEY, JJ., and SILVESTRI, Senior Judge.

FRIEDMAN, Judge.

St. Mary's Home of Erie (Employer) appeals from an order of the Workmen's Compensation Appeal Board (WCAB) affirming the decision of a Workers' Compensation Judge (WCJ) to: (1) deny Employer's Petition to Terminate the workers' compensation benefits of Dorothy Stadtmiller (Claimant); (2) deny Employer's Petition to Review the parties' Agreement for Compensation; and (3) grant Claimant's Petition to Review Medical Treatment.

Claimant worked for Employer as a housekeeper when, on November 1, 1991, she became disabled due to a work-related low back injury. Claimant received benefits pursuant to an Agreement for Compensation and a Supplemental Agreement.[1] (WCJ's Finding of Fact, No. 18(a)-(b), (e).)

On February 8, 1993, Employer filed a Petition to Terminate benefits, stating: "Employer has recently received medical information which reveals the fact that [Claimant's] disability and medical expense on and after November 1, 1991 was not due to any work injury or aggravation of a pre-existing condition." (WCJ's Finding of Fact, No. 2; R.R. at 2a.) Claimant filed a timely answer denying the material allegations of the petition. (WCJ's Finding of Fact, No. 3; R.R. at 5a.)

Employer later amended its termination petition to include a Petition to Review the parties' Agreement for Compensation, averring that Employer accepted liability for the original claim "based on the reasonable belief that [C]laimant suffered a disc herniation as a result of a work incident," and that "[s]ubsequent medical evidence (including [an] operative report and diagnostic studies) revealed that [C]laimant's disability ... was not due to a work injury or a work[-]related aggravation of a pre-existing condition." (WCJ's Finding of Fact, No. 6; R.R. at 6a.) Claimant filed a timely answer denying the material allegations of Employer's second petition. (R.R. at 8a–9a.)

In addition, Claimant filed a Petition to Review Medical Treatment, alleging that Employer refused to pay Claimant's reasonable and necessary medical expenses. (WCJ's Finding of Fact, No. 4.; R.R. at 10a–11a.) Hearings on these petitions were held before a WCJ.

At the hearings, Claimant testified on her own behalf, explaining that her back pain began in June 1991 while she was using a wet mop at work. Claimant stated that she eventually sought treatment for her back pain on November 1, 1991, and that she underwent surgery at The Cleveland Clinic Foundation on August 18, 1992. Claimant also testified that she had scoliosis,[2] a pre-existing condition; however, Claimant insisted that no one ever told her that the scoliosis was causing her back pain. In fact, according to Claimant, she had never received physical therapy or any other treatment for her scoliosis. (WCJ's Finding of Fact, No. 8.)

Employer presented the deposition testimony of Louis J. Iorio, M.D., a board-certified orthopedic surgeon, who had examined Claimant on July 16, 1992, prior to her surgery. Before the surgery, Dr. Iorio believed that Claimant had a herniated disc at the L5–S1 level, which probably resulted from repetitive heavy lifting at work, and a serious progressive lumboscoliosis condition. Dr. Iorio agreed with Claimant's treating physician that both conditions had to be surgically corrected to prevent the recurrence of Claimant's symptoms. However, after the surgery, Dr. Iorio reviewed the operative re-

---

1. The Agreement for Compensation described the injury as a "herniated disc L4–L5 aggravated by working as a housekeeper." (WCJ's Finding of Fact, No. 7; R.R. at 1a.)

2. Scoliosis is curvature of the spine.

ports and concluded therefrom that Claimant did *not* have an L5–S1 disc herniation; instead, Claimant was suffering only from the late sequelae of severe kyphoscoliosis. Dr. Iorio also opined that Claimant's pre-operative condition was not related to any work injury.[3] (WCJ's Finding of Fact, No. 10–11.)

Upon consideration of the evidence, the WCJ rejected Dr. Iorio's testimony and found that: (1) Claimant suffered a work-related injury to her low back on or about November 1, 1991; (2) Employer accepted liability for a low back injury "aggravated by working as a housekeeper;" (3) it is unknown whether the low back injury was, in fact, a herniated disc at L5–S1; (4) Claimant is unable to perform her pre-injury job duties as a result of the work-related low back injury; and (5) Claimant's medical treatment is causally related to the work injury. (WCJ's Findings of Fact, Nos. 18(a)-(f).) The WCJ concluded from these findings that: (1) Employer failed to prove that Claimant's work-related disability has ceased; (2) Employer failed to prove that the Agreement for Compensation should be set aside; and (3) Claimant proved that her medical treatment was causally related to her work injury. (WCJ's Conclusions of Law, Nos. 4–6.) Thus, the WCJ denied Employer's petitions and granted Claimant's petition. Employer appealed to the WCAB, which affirmed the WCJ's decision.

 On appeal to this court,[4] Employer argues that, although Employer accepted liability for a work-related injury in the nature of a "herniated disc," Employer should not be liable for the medical treatment of Claimant's scoliosis, which is not work-related. In other words, Employer contends that Claimant failed to prove that there was a causal connection between Claimant's medical treatment and her work injury.[5] We disagree.

 Where a claimant seeks payment for medical treatment, and there is no obvious causal connection between the medical condition receiving treatment and the work injury, the claimant bears the burden of proving such a causal connection. *Gens v. Workmen's Compensation Appeal Board (Rehabilitation Hospital of Mechanicsburg)*, 158 Pa.Cmwlth. 313, 631 A.2d 804 (1993), *appeal denied*, 538 Pa. 618, 645 A.2d 1321 (1994).

As a preliminary matter, we note that the record supports the WCJ's finding that Claimant sustained a work-related injury to her low back. Indeed, Employer *admitted* in the Agreement for Compensation that Claimant became disabled as the result of a work-related injury to her low back.[6] In signing that agreement, Employer also implicitly acknowledged that Claimant's pre-existing scoliosis did *not* cause her disability. In other words, *but for* the work injury, Claimant could have continued to perform her work duties despite her scoliosis. Thus, Employer is liable for all medical treatment related to Claimant's low back work injury.

Claimant's treating physician and Employer's own medical expert both diagnosed Claimant's low back work injury as a herniated disc. The same doctors agreed that proper treatment of that work injury required

---

3. Employer also presented the December 23, 1992 medical report of Peter W. Kozicky, M.D., who had conducted a file review of Claimant's case and concluded that Claimant did not have a disc herniation, and that Claimant's work as a housekeeper did not aggravate Claimant's pre-existing scoliosis. (WCJ's Finding of Fact, No. 12.)

4. Our scope of review in appeals from the WCAB is limited to determining whether a claimant's constitutional rights were violated, an error of law was committed, or the findings of fact are supported by substantial evidence. *Housing Authority of the City of Pittsburgh v. Workmen's Compensation Appeal Board (Sheffield)*, 166 Pa. Cmwlth. 456, 646 A.2d 686, *appeal denied*, 539 Pa. 697, 653 A.2d 1234 (1994).

5. Employer also argues that the WCJ erred in placing the burden of proof on Employer to show that Claimant's medical bills were *not* causally related to Claimant's work injury.

However, contrary to Employer's assertion, the WCJ placed the burden of proof on Claimant, concluding that Claimant "demonstrated a causal connection between the original work injury and her resultant medical bills." (WCJ's Conclusion of Law, No. 7.) As our analysis indicates, we agree with the WCJ.

6. The Agreement for Compensation identified an L4–L5 injury aggravated by Claimant's work as a housekeeper. The L4–L5 lumbar vertebrae are in the low back. Stedman's Medical Dictionary, 1710 and Plate 2 (25th ed.1990).

surgical correction of Claimant's pre-existing scoliosis. Thus, *but for* the work injury to her low back, Claimant would *not* have needed surgery at that time to mend her scoliosis. In other words, *some* work injury, if not a herniated disc, caused Claimant to need low back surgery on August 18, 1992.

It does not matter that the surgical team discovered during surgery that the pre-surgery diagnosis was wrong, and that Claimant's work injury was *not* a herniated disc but, rather, some *other* low back problem which required a different surgical procedure. The point is that *some* work-related injury precipitated the surgery. Thus, because there is a causal connection between the surgery and the work injury, Employer must bear the cost.

■ Employer next argues that the WCAB erred in failing to address whether the WCJ improperly awarded certain litigation costs submitted after the record was closed and without allowing Employer an opportunity to dispute them.[7] We agree.

At the March 16, 1994 hearing, after the WCJ closed the record, Claimant's counsel stated:

> I wasn't aware that you were going to close the record today. Could we have perhaps two weeks to a formal close of the record and submit our objections [to the deposition of Dr. Iorio]?

(R.R. at 97a.) The WCJ then replied: "Yes. I'll pull the file out in 14 days and it will be decided at that time." (R.R. at 98a.)

However, on May 31, 1994, the WCJ telephoned Claimant's counsel and discussed several matters pertaining to the record, including the absence therein of Claimant's bill of costs. (R.R. at 316a.) Claimant's counsel responded by sending a bill of costs to the WCJ on June 2, 1994. (R.R. at 316a.)

When the WCJ received Claimant's letter and the bill of costs, the WCJ marked the bill of costs: CLAIMANT'S EXHIBIT NO. 7; DATE—6/7/94; OBJECTION—NONE. The WCJ marked Claimant's letter: CLAIMANT'S EXHIBIT NO. 8; DATE— 6/7/94; OBJECTION—NONE. (O.R., Claimant's Exhibits Nos. 7–8.) On June 8, 1994, one day after receiving the letter and the bill of costs, the WCJ issued a decision which included an award of costs as shown on this bill of costs.

■ It is obvious to us that, prior to the circulation of the WCJ's decision, Employer had no opportunity to object to Claimant's submission of these exhibits on grounds that the record had been closed or to question the items listed on the bill of costs. We believe that, under these circumstances, it was an abuse of discretion for the WCJ to reopen the record to accept the exhibits in evidence[8] and, then, without affording Employer an opportunity to object, record on them that Employer had no objection to their admission.

Because Claimant had the burden to prove the amount of her costs in this case and failed to produce evidence of those costs prior to the close of the record, and because the WCJ abused his discretion in reopening the record to accept Claimant's bill of costs into evidence, Claimant is not entitled to reimbursement for those costs.

Accordingly, we reverse the WCJ's award of costs as set forth in the bill of costs which was improperly admitted into evidence after the close of the record. In all other respects, we affirm.[9]

### ORDER

AND NOW, this 1st day of October, 1996, we reverse the Workers' Compensation Judge's award of costs as set forth in the bill

---

7. In failing to address the matter, the WCAB implicitly affirmed the WCJ's decision.

8. A WCJ's reopening of the record for additional evidence will not be reversed absent an abuse of discretion. *Sherrill v. Workmen's Compensation Appeal Board (School District of Philadelphia)*, 154 Pa.Cmwlth. 492, 624 A.2d 240 (1993).

9. Employer also argues that the WCAB erred in failing to address the WCJ's holding that a medical expert cannot rely on operative reports of another physician in rendering an independent opinion. However, because Employer misinterprets the WCJ's holding, we decline to address this matter. (*See* WCJ's Conclusion of Law, No. 8.)

of costs admitted into evidence after the close of the record. In all other respects, we affirm the order of the Workmen's Compensation Appeal Board, at A94–1742, dated December 11, 1995.

SILVESTRI, Senior Judge, concurring and dissenting.

St. Mary's Home of Erie (Employer) filed two separate petitions, one to terminate benefits and the other to review the parties' agreements for compensation[1], and Dorothy Stadtmiller (Claimant) filed a petition to review medical treatment. The decision and order of the Workers' Compensation Judge (WCJ), which was affirmed by the Workmen's Compensation Appeal Board (Board), denied both petitions of Employer and granted the petition of Claimant along with an award of costs. I concur insofar as the majority reverses the award costs as set forth in the bill of costs; however, I disagree with the majority's affirmance in all other respects and accordingly dissent.

The WCJ, as herein relevant, concluded that: 1) Employer failed to meet the burden of proof required to demonstrate that all disability on the part of Claimant had ceased and terminated (WCJ's Conclusions of Law, Nos. 2 and 5); 2) Employer failed to demonstrate that the original agreement of December 17, 1991, should be set aside (WCJ's Conclusions of Law, Nos. 3 and 6); and 3) Claimant proved that her medical treatment was causally related to her work injury (WCJ's Conclusions of Law, Nos. 4 and 7). (R.R., pp. 356–357). Although Employer asserted on appeal that the WCJ erred with regard to all of the aforesaid conclusions[2],

the Board, in affirming the decision of the WCJ, merely concluded "that there is substantial competent evidence to support the WCJ's holding that Defendant failed to prove that Claimant's disability was not caused by the November 1, 1991 injury." (R.R., p. 386). In so doing, the Board noted that the WCJ, as was his prerogative, rejected the testimony of Employer's medical witness, Dr. Louis J. Iorio (Dr. Iorio), as not credible. (R.R., pp. 385–386).[3]

In its petition for review to this Court, Employer argues that the Board, in affirming the denial of its petition to terminate benefits, erred by concluding that there was substantial competent evidence to support the WCJ's finding that Employer failed to prove that Claimant's disability was not caused by the November 1, 1991 injury. Employer also argued that the Board further erred by failing to address its petition to review the agreement for compensation and Claimant's petition to review medical treatment. (R.R., pp. 391–392). The underlying basis of Employer's arguments is that it had incorrectly entered into the agreement for compensation based on its mistaken belief that Claimant had suffered a work-related injury in the nature of a herniated disk at L4–L5 when in actuality Claimant's low back pain was the result of a pre-existing condition which was neither caused nor aggravated by a work-related injury.[4]

It is important to note that Employer has a separate burden of proof with respect to each of its two petitions. Employer does not contend that Claimant was not disabled as the result of low back pain or that she is now fully recovered and able to work. Rather, Employer argues that Claimant's disability is not due to any work-related injury or aggravation of a pre-existing condition. Thus, in

---

1. The petition to terminate benefits was filed on February 3, 1993. The later petition, which sought to review the agreement for compensation of December 17, 1991 and the supplemental agreement of December 24, 1991, was filed on February 2, 1994. (R.R., pp. 2 and 6).

2. Employer also asserted that the WCJ erred with regard to Conclusions of Law Nos. 8 and 11. Employer further asserted that Findings of Fact Nos. 8, 17a, and 18(a-f) were not supported by substantial evidence. (R.R. 363–369).

3. Dr. Iorio testified that, in spite of his previous diagnosis to the contrary, his current medical opinion is that Claimant never suffered from a herniated disc at L5–S1 and that the sole cause of her low back pain was her scoliosis. (R.R., pp. 115–117, 121–122, 124–125).

4. There is no dispute that Claimant had scoliosis, a curvature of the spine, which preceded her earliest allegations of low back pain beginning in June of 1991.

regard to its termination petition, Employer is required to demonstrate that Claimant's disability is not causally connected to a work-related injury. *See Beissel v. Workmen's Compensation Appeal Board (John Wanamaker, Inc.),* 502 Pa. 178, 465 A.2d 969 (1983).[5] The WCJ had concluded that Employer was "required to demonstrate that *all* disability on the part of the claimant had ceased and terminated." (Emphasis added) (WCJ's Conclusions of Law, Nos. 2 and 5).

With regard to its petition to review the agreement for compensation, Employer is required to demonstrate that the agreement contained a true mistake of fact which renders said agreement materially incorrect. *See* Section 413(a) of the Workers' Compensation Act (Act)[6]; *Birmingham Fire Insurance Co. v. Workmen's Compensation Appeal Board (Kennedy),* 657 A.2d 96 (Pa. Cmwlth.1995).[7] Employer contends that the agreement for compensation contains a true mistake of fact which renders said agreement materially incorrect in that Claimant did not suffer the alleged work-injury, a herniated disk at L4–L5, as was set forth in the nature of injury portion of the agreement.

The majority does not address whether or not Employer satisfied either of its two burdens of proof. Instead, beginning on page five of its opinion, the majority chooses only to address whether or not Claimant satisfied her burden of proof, namely demonstrating that the surgical correction of her pre-existing scoliosis was causally connected to a work-related injury. The majority notes, as a preliminary matter, that the record supports the WCJ's finding that Claimant sustained a work-related injury to her low back. The majority, however, fails to identify the specific record evidence which supports such a finding. The majority then concludes that:

*some* work injury, if not a herniated disc, caused Claimant to need low back surgery on August 18, 1992.

It does not matter that the surgical team discovered during surgery that the pre-surgery diagnosis was wrong, and that Claimant's work injury was *not* a herniated disc, but rather, some *other* low back problem which required a different surgical procedure. The point is that *some* work-related injury precipitated the surgery. Thus, because there is a causal connection between the surgery and the work injury, Employer must bear the cost. (Emphasis in original).

I disagree with the majority's conclusion that Claimant's surgery was precipitated by a work-related injury. The majority incorrectly concludes that Employer, by initially accepting liability for Claimant's low back pain which was believed to be the result of a herniated disc at L4–L5, admitted, beyond contest, that Claimant became disabled as the result of a work-related injury to her low back. In so doing, the majority implicitly dismisses Employer's argument to the contrary thereby summarily denying both of Employer's petitions.

I believe that Employer, through the testimony of Dr. Iorio, satisfied its burdens of proof with regard to both of its petitions. Thus, being of the opinion that Claimant never sustained a work-related injury in the first place, I believe the majority errs in concluding that Claimant satisfied her burden of demonstrating the requisite causal connection to render her August 18, 1992 surgery compensable. Accordingly, since I believe that the majority erred in affirming the decision of the Board in all other re-

5. The burden never shifts to a claimant in a termination proceeding to prove the existence of a causal connection between the disability and the injury. *See School District of Philadelphia v. Workmen's Compensation Appeal Board (Coe),* 163 Pa.Cmwlth. 89, 639 A.2d 1306 (1994).

6. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 771.

7. For a mistake of fact or law to justify setting aside a compensation agreement, it must have existed when the agreement was executed. *Fehr*

*v. Y.M.C.A., Pottsville,* 201 Pa. Superior Ct. 107, 192 A.2d 143 (1963). An employer will not be entitled to seek relief under Section 413(a) of the Act, where employer failed to avail itself of the opportunity to investigate the claim before entering into the agreement. *See Cedar Farms, Inc. v. Workmen's Compensation Appeal Board (Santiago),* 665 A.2d 1326 (Pa.Cmwlth.1995); *Geriatric & Medical Centers v. Workmen's Compensation Appeal Board (Facey),* 167 Pa.Cmwlth. 590, 648 A.2d 1289 (1994), *petition for allowance of appeal denied* 541 Pa. 644, 663 A.2d 695 (1995).

spects, I would reverse and vacate the decision of the Board inasmuch as it denies both of Employer's petitions and grants the petition of Claimant.