**Louise BAILEY, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (ABEX CORP.), Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 10, 1998.
Decided Aug. 12, 1998.

Dominic D. Salvatori, Pittsburgh, for petitioner.

Michael A. Fetzner, Erie, for respondent.

Before COLINS, President Judge, and DOYLE, McGINLEY, PELLEGRINI, KELLEY, FLAHERTY and LEADBETTER, JJ.

McGINLEY, Judge.

Louise M. Bailey (Claimant) petitions for review from the October 15, 1997, order of the Workers' Compensation Appeal Board (Board), which affirmed the Workers' Compensation Judge's (WCJ) dismissal of Claimant's review and reinstatement petitions and granted Claimant's modification petition in part.

Claimant sustained a work-related injury to her cervical spine on January 11, 1985. ABEX Corporation (Employer) issued a notice of compensation payable and set compensation at a rate of $272.32 weekly. On September 15, 1988, Claimant and Employer entered into a supplemental agreement and acknowledged that Claimant's disability changed from a temporary total disability to a permanent partial disability. The parties also agreed that Claimant was capable of earning $132.32 per week, and Claimant was entitled to a partial indemnity benefit of $140.00 per week. Claimant subsequently petitioned for a commutation which was granted by the WCJ on November 4, 1988 [1].

On August 21, 1992, Claimant filed reinstatement and review petitions. The reinstatement petition alleged that Claimant sustained a recurrence of total disability on April 15, 1990. The petition for review alleged a material mistake in the supplemental agreement entered in conjunction with the commutation of Claimant's benefits. On October 9, 1992, Claimant filed a modification petition for permanent and unsightly scarring arising from cervical surgeries.

Employer answered with a denial of all material allegations. Subsequently, Employer filed amended answers to Claimant's petitions for reinstatement and review and raised the three-year statute of limitations. After several hearings, the case was reassigned from WCJ, Albert E. Wehan to WCJ, Perry D. Jones. After one additional hearing, solely to review the Claimant's scars, the WCJ issued his decision on November 28, 1995. Therein, he held that Claimant's petitions for reinstatement and review were barred by the statute of limitations pursuant to Section 413(a) of the Act, 77 P.S. § 772. Additionally, the WCJ found that only Claimant's surgery of January 29, 1985, was related to her injury of January 11, 1985, and that the three subsequent surgeries in 1990, 1991, and 1992, were solely the result of the progression of an underlying degenerative disease of the spine unrelated to the work injury. Further,

1. Commutation of benefits are permitted by Section 316 of the Workers' Compensation Act (Act) of June 2, 1915, P.L. 736 *as amended,* 77 P.S. § 604; a commutation is defined as the present payment of future benefits in one lump sum, instead of payment in periodic installments. 1 Alexander F. Barbieri, *Pennsylvania Workmen's Compensation and Occupational Disease* 5.43 (1975).

the WCJ awarded fifteen weeks of benefits for that portion of the scar related to the surgery in 1985.

Cross appeals were filed with the Board by Claimant and Employer.[2] The Board affirmed the WCJ's decision, holding that the WCJ did not err in dismissing Claimant's reinstatement and review petitions because the petitions were filed over three years after the commutation of benefits and were barred by the statute of limitations. Additionally, the Board held that the WCJ did not err in finding that the Claimant's last three surgeries were unrelated to her January 11, 1985, work incident. Claimant appealed to this Court.[3]

### Modification Petition

■ First, Claimant contends that the WCJ erred when he permitted Employer to litigate whether Claimant's surgeries subsequent to January 29, 1985, and resultant surgical scars were related to the original work injury where Employer accepted liability for the initial cervical injury by the issuance of a notice of compensation payable and never challenged the causation of the subsequent surgeries and, in fact, paid for them. In *Bellefonte Area School District v. Workmen's Compensation Appeal Board (Morgan)*, 156 Pa.Cmwlth. 304, 627 A.2d 250 (1993), *alloc. granted*, 538 Pa. 618, 645 A.2d 1321, *affirmed* 545 Pa. 70, 680 A.2d 823 (1994), we encouraged employers to continue the practice of voluntarily paying the medical expenses of injured employees without fear of a later penalty for those payments. We quoted our Pennsylvania Superior Court:

> Since the early days of workmen's compensation, the insurance carriers have been liberal in paying medical and hospital bills beyond those required by the statute.... The insurers pay for this treatment to help the injured employes regain their health, which minimizes their future disability and reduces the liability of the insurance carrier for future compensation payments.

Even if the reason for the insurance carriers' desire to reduce or prevent future disability of injured employes is to save the carriers money, the injured employes are the chief beneficiaries of the practice. Condemning or penalizing the insurance carriers for voluntarily paying these medical and hospital bills would discourage their continuing the practice. Injured employes would suffer most from the abandonment of the practice.

*Id.*, 627 A.2d at 254, *quoting, Dennis v. E.J. Lavino & Co.*, 203 Pa.Super. 357, 201 A.2d 276, 279 (1964). Therefore, when an employer voluntarily pays a claimant's medical bills, it should not be considered an "admission" of liability on behalf of the employer. To decide otherwise "would force employers to abandon a long established practice of voluntarily paying medical and hospital expenses of injured employees beyond those required by statute...." *Bellefonte*, 627 A.2d at 254.

In *St. Mary's Home of Erie v. Workmen's Compensation Appeal Board (Stadtmiller)*, 683 A.2d 1266 (Pa.Cmwlth.1996), Dorothy Stadtmiller (Stadtmiller) was working as a housekeeper for St. Mary's Home of Erie (St. Mary's) when she injured her low back on November 1, 1991. St. Mary's and Stadtmiller executed an agreement for compensation and a supplemental agreement, which indicated that the injury was a "herniated disc L4–L5 aggravated by working as a housekeeper." *Id.* at 1267 n. 1. On February 8, 1993, St. Mary's petitioned to terminate Stadtmiller's benefits contending that the injury was not related to a work-injury, but due to a pre-existing condition. St. Mary's contended that they should not be liable for the medical treatment of Stadtmiller's pre-existing condition, which was not work-related. We determined that St. Mary's:

> [A]dmitted in the Agreement for Compensation that [Stadtmiller] became disabled as the result of a work-related injury to her low back. In signing that agreement, [St. Mary's] also implicitly acknowledged

---

2. Employer's appeal of the WCJ's award of costs to Claimant was denied, and is not at issue here.

3. Our review is limited to a determination of whether constitutional rights were violated, whether an error of law was committed and whether the necessary findings are supported by substantial evidence. *Boehm v. Workmen's Compensation Appeal Board (United Parcel Services)*, 133 Pa.Cmwlth. 455, 576 A.2d 1163 (1990).

that [Stadtmiller's] pre-existing scoliosis did *not* cause her disability. In other words, *but for* the work injury, [Stadtmiller] could have continued to perform her work duties despite her scoliosis. Thus, [St. Mary's] is liable for all medical treatment related to [Stadtmiller's] low back work injury. (emphasis in original)

*St. Mary's*, 683 A.2d at 1268.

Stadtmiller's physician found that in order to correct Stadtmiller's work-related injury it was necessary to correct Stadtmiller's pre-existing condition. We determined that, "[t]he point is that some work-related injury precipitated the surgery. Thus, because there is a causal connection between the surgery and the work injury, Employer must bear the cost." *St. Mary's*, 683 A.2d at 1269.

In *Noverati v. Workmen's Compensation Appeal Board (Newtown Squire Inn)*, 686 A.2d 455 (Pa.Cmwlth.1996), Giuseppe Noverati (Noverati) injured his lower back during the course and scope of his employment with Newtown Squire Inn (Inn). We agreed with the WCJ and found:

[Inn] could not relitigate the cause of [Noverati's] original disabling injury because its work-relatedness was finally resolved in the Claim Petition proceeding.... However, we also agree with the WCAB that, in a non-occupational disease case, *Hebden* does not preclude an employer from seeking to terminate or suspend an employee's benefits based on medical evidence estab-

lishing that an employee's *current* disability is due to non-work-related factors.

. . .

However, while we do not dispute that [Noverati's] pre-existing non-work-related scoliosis cannot be cured and only gets worse, it was the aggravation of that condition which constituted [Noverati's] disabling work-related injury. Because there is no indication that *this* injury was incapable of resolution, *Hebden* does not preclude a re-examination of [Noverati's] present disability.

In that regard, we recognize that an employer is entitled to terminate benefits if it demonstrates that the employee has fully recovered from his or her work-related injury and that any remaining disability is due to a pre-existing condition. ... What [Inn] cannot do, however, is establish grounds for termination or suspension based on evidence that [Noverati's] disability is not now work-related because, in fact, it never was work-related.

*Noverati*, 686 A.2d at 459–460.

■ Therefore, the question of whether the subsequent surgeries were work-related was a valid issue and the WCJ did not err when he permitted Employer to establish they were the result of a non-work-related degenerative disease. Employer presented the expert medical testimony of Dr. William H. Druckemiller, M.D. (Dr. Druckemiller) who opined that Claimant's latter three cervical surgeries were caused by non-work-related factors[4]. Dr. Druckemiller's opin-

---

4. Dr. Druckemiller was questioned by Michael A. Fetzner, Employer's Attorney:

Q. The surgery that Dr. Collis performed on May 7th, 1990, in your professional opinion within a reasonable degree of medical certainty, was this surgery necessitated by the incident that occurred at work on January 11th, 1985?

A. No.

Q. Why do you feel that way?

A. Because the problem in the first place is too widely dispersed, [it] would take a long time to involve all three spaces. And for it to show the problems it showed on the MRI, would again take a number of years.

Q. Assuming that Mrs. Bailey was having this discomfort that caused her to stop selling real estate in April of 1990, what was the cause of her recurring pain that disabled her at that time?

A. Progression of her degenerative spinal problem, with further encroachment on the nerves going through the foramina there.

Q. You indicated there was an MRI performed before the second surgery by Dr. Collis. Were the findings on this MRI performed at Lutheran Medical Center, the same degenerative findings found by Dr. Hahn at the Cleveland Clinic back in 1985, or by the doctor at Meadville on January 21st, 1985, when he did the myelogram?

. . .

A. Well, they were pretty much the same. Actually, the ones in 1985 were described a little differently here and there, but the reports as far as the foramina are concerned and so forth are pretty much the same.

Q. Was there any, could you tell from reviewing the reports, whether there was any progression of the degenerative condition from '85 to 1990?

ion regarding the later three surgeries was separate and independent from his opinion regarding the original injury. Dr. Druckemiller opined that Claimant's later three surgeries were not necessitated by the prior work injury on January 11, 1985. The WCJ accepted Dr. Druckemiller's testimony that the later three surgeries were a natural progression of Claimant's pre-existing condition, and rejected the opinion of Claimant's physician, Howard J. Senter, M.D.

. . .
A. Well, the MRI in '90 showed canal stenosis at C3. And the ones in '85 did not mention that. And the ones in '85 showed some flattening at 5–6 of the cord, and the MRI in '90 did not mention that. So they're sort of a standoff.
. . .
Q. Okay. The third surgery, that one that was performed on December 29th, 1991, was that surgery necessitated, in your professional opinion within a reasonable degree of medical certainty, by the incident that occurred at work on January 11, 1985?
A. No.
Q. What caused the need for the third operation?
A. Further cervical degeneration, degeneration of the C6—C6–7 disk area. And undoubtedly bar formation in that area, causing further pressure on the cervical roots.
. . .
Q. The surgery that was performed on or about June 3rd, 1992, in your professional opinion within a reasonable degree of medical certainty, was it necessitated by the incident that occurred at Abex on January 11th, 1985?
A. No.
Deposition of Dr. William H. Druckemiller, August 19, 1993, at 29–31, 35, 37–38; Reproduced Record (R.R.) at 227–229, 233, 235–236.

5. The WCJ found:
6. . . . Dr. Druckemiller expressed the opinion that claimant's cervical surgery on January 29, 1985 was not related to claimant's work injury of January 11, 1985. I do not find his opinion credible and find Dr. Senter's opinion that this surgery was related to claimant's work injury more credible and as fact.
. . .
7. . . . Based upon Dr. Vagley's testimony, it is found that his opinion as to causation is not probative. Dr. Vagley's opinion that the scars are permanent in nature is accepted as fact.
. . .
8. . . . Although claimant is correct that the defendant is estopped by *res judicata* from relitigating the compensability of the January 11, 1985 work injury, that is a separate issue from a medical opinion which deals not in legal terminology but in medical terminology based upon medical documentation. Claimant can

(Dr. Senter), that but for the Claimant's initial work injury, Claimant would not have had to undergo the later three surgeries.[5]

■ The WCJ had the authority to conclude Claimant was not entitled to a disfigurement award for the scars caused by the later three surgeries. Credibility determinations are solely within the WCJ's discretion, and if the facts as found by the WCJ rest on competent evidence, we may not disturb

certainly challenge the credibility and probative value which should be afforded Dr. Druckemiller's opinion, but Dr. Druckemiller's medical opinion, simply because it is contrary to legally established facts which now bind the parties, does not render his medical opinions inadmissible.
9. Dr. Druckemiller's opinion that the claimant did not suffer a work-related injury on January 7, 1985 is rejected. Likewise, Dr. Druckemiller's opinion that the surgery on January 29, 1985 was unrelated to claimant's January 11, 1985 work injury is rejected.
Dr. Druckemiller's opinion that the three most recent surgeries are unrelated to claimant's work injury is accepted as more credible than the opinion of Dr. Senter. This finding is based upon the credible testimony which indicates that there was no clear cut progression of claimant's degenerative spinal disease process by MRI between 1985 and 1990. This claimant's cervical and lumbar degenerative disease progressed significantly between 1990 and 1991. Thus, it is found as a fact that claimant's three most recent surgeries were related to her underlying degenerative condition and not to her January 11, 1985 work injury.
10. Because claimant's January 19, 1985 surgery has been found to be causally related to her work injury of January 11, 1985, claimant is entitled to benefits for surgical scarring as a result of that surgery. The compensable scar was located on the back of claimant's neck. According to claimant's credible testimony, a second scar was superimposed over the first scar due to a later surgery and the later surgery extended the original, compensable scar both upwards and downwards. Claimant stated that the original scar could not be seen separately because of the subsequent surgery.
Based upon claimant's credible testimony, it is found as a fact that claimant's work-related surgical scar entitles claimant to benefits for 15 weeks of compensation. In making this finding, I have deducted the length of the scar which extended up into claimant's hair as well as a portion of the scar which extended downwards towards claimant's back in a manner which comports as closely as possible the claimant's credible testimony.
WCJ Decision, November 28, 1995 (WCJ Decision), Findings of Fact (F.F.) Nos. 6–10, at 6–8.

them. *Universal Cyclops Steel Corporation v. Workmen's Compensation Appeal Board,* 9 Pa.Cmwlth. 176, 305 A.2d 757 (1973).

The Board affirmed the WCJ, stating:

Having reviewed Dr. Druckemiller's testimony, we are convinced that the WCJ's decision is supported by substantial, competent evidence. Therefore, the Claimant's argument is rejected.... The WCJ did not err in finding that the Claimant's last three surgeries were not related to her January 11, 1985 work incident.

Board's Decision, October 15, 1997, at 7. We agree.

### Review and Reinstatement Petitions

Next, Claimant contends that the WCJ erred when he denied Claimant's review and reinstatement petitions as time-barred. Section 413(a) of the Act, 77 P.S. § 772, states in pertinent part:

[N]o notice of compensation payable, agreement or award shall be reviewed, or modified, or reinstated unless a petition is filed with the department within three years after the date of the most recent payment of compensation made prior to the filing of such petition: ... And provided further, That any payment made under an established plan or policy of insurance for the payment of benefits on account of nonoccupational illness or injury and which payment is identified as not being workmen's compensation shall not be considered to be payment in lieu of workmen's compensation, and such payment shall not toll the running of the Statute of Limitations.

In *Mason v. Workmen's Compensation Appeal Board (ACME Markets),* 156 Pa. Cmwlth. 10, 625 A.2d 1271 (1992), Wilfred Mason (Mason) petitioned for reinstatement and modification of benefits for an injury that occurred on July 1, 1977, while he was employed by ACME Markets. Mason had received compensation benefits and on July 13, 1981, a referee granted Mason's request for a commutation. Mason sought reinstatement six years later, and alleged disability as of September 1981. The referee denied Mason's petition's pursuant to Section 413(a) of the Act and the Board affirmed. We found:

Here, the $25,000 lump sum payment in commutation of the claimant's partial disability benefits effectively compensated him for the balance of his entitlement. Upon his receipt of all benefits payable pursuant to the commutation order, there was no remaining period during which such benefits might be resumed and no suspension of benefits to which a reinstatement petition could apply.... Therefore, the petition filed six years after the receipt of the last payment due were time-barred. (citations omitted).

*Mason,* 625 A.2d at 1272–1273.

The WCJ held that Claimant's review and reinstatement petitions were time barred because they were not filed within three years from the date Claimant received her commutation payment.[6] The Board affirmed and stated:

Payment of medical expenses does not constitute compensation that could toll the

6. The WCJ found:

> 3. Claimant was granted a commutation of benefits on November 4, 1988, by decision of Referee Pastewka. The commutation order approved the Supplemental Agreement of September 15, 1988. The petition for reinstatement was filed on July 21, 1992. The parties stipulated that the commutation was paid on November 9, 1988. Thus the Reinstatement Petition was filed more than three years after the last payment of compensation. Pursuant to *Mason v. WCAB (Acme Markets),* 156 Pa. Cmwlth. 10, 625 A.2d 1271 (1992), a petition for reinstatement following a commutation of partial disability benefits must be filed within three years of the last payment of compensation under Section 413. The present case is on point.
> . . .

Claimant argues that because she returned to work after the commutation and subsequently again became disabled, this somehow distinguishes the instant case from *Mason.* I reject this argument and find that *Mason* appropriately applies to this case. It is noted further that claimant alleges a recurrence of total disability as of April 15, 1990. This date is well within the three year limitation of Section 413 and claimant had over a year in which to timely file a Reinstatement Petition. No suitable rationale for failing to timely file the Reinstatement Petition has been advanced by the claimant. Thus it is found that the Reinstatement Petition is time-barred pursuant to *Mason.*

> 4. Claimant's Review Petition is considered next. Pursuant to Paragraph 2 of Section 413(a) which the parties referenced in their

three-year statute of limitations on a Reinstatement Petition. *O'Brien v. Workmen's Compensation Appeal Board (Montefiore Hospital)*, 690 A.2d 1262 (Pa.Cmwlth. 1997). In *Mason v. Workmen's Compensation Appeal Board (Acme Markets)*, [156 Pa.Cmwlth. 10] 625 A.2d 1271 (Pa.Cmwlth. 1992), the Commonwealth Court held that for purposes of determining whether a petition is time-barred after a commutation of benefits, the statute of limitations begins the [sic] run from the date that the claimant received the lump sum payment of commuted benefits.

The WCJ found that the commutation of benefits was paid on November 9, 1988. (Finding of Fact 3) However, Claimant did not file her Reinstatement Petition until July 21, 1992. (Id.) The filing was clearly over three years after the commutation of benefits.

. . .

Having reviewed the record, we find that the WCJ's decision is supported by substantial competent evidence. Therefore, the Claimant's argument is rejected. We hold that the WCJ did not err in finding that the Claimant's Reinstatement Petition and Review Petition were both barred by the three year Statute of Limitations.

Board's Decision, October 15, 1997, at 4–6. We agree.

Accordingly, we affirm.

### ORDER

AND NOW, this 12th day of August, 1998, the Order of the Workers' Compensation Appeal Board in the above captioned case is affirmed.

---

briefs, the same result would be reached as was reached regarding claimant's Reinstatement Petition. This is so because the Review Petition was, like the Reinstatement Petition, not filed within three years of the last payment of compensation.

. . .

I find that there was no material mistake in the Supplemental Agreement inasmuch as the Supplemental Agreement simply states that the claimant acknowledges and agrees to her time of injury average weekly wage, and acknowledges that she is now capable of working a full-time, light duty job with a weekly earning capacity of $132.32. Claimant has presented no evidence to indicate that anything contained in the Supplemental Agreement was in fact mistaken or untrue. This is so regardless of claimant's lack of awareness of the results of a myelogram.

Further, although claimant alleges that she was unaware of the full extent of her disability and that she would require subsequent cervical surgeries, there has been no evidence submitted to indicate that the claimant had injuries beyond those which were acknowledged by the parties when the Supplemental Agreement was executed, nor was there any evidence presented which, at the time of the execution of the Supplemental Agreement, would indicate that any future cervical surgery was known to be necessary. No physician stated that the claimant would need additional cervical surgery in the future. No evidence has been presented to indicate that the claimant was not capable of performing a full-time, light duty job with an earning capacity of $132.32 at the time the Supplemental Agreement was executed. Therefore, there is no material mistake which would permit the Review Petition to be considered timely filed when it was not filed within three years of the date of the last payment of compensation. Since the claimant's Review Petition was not filed within three years of the date of last payment of compensation, it is found as fact that the Review Petition filed by the claimant is time barred.

If *Cahill* stands for the proposition that a Review Petition must be filed within three years of the date of last payment of compensation regardless of the issue presented in the petition, then claimant's Review Petition must fail because it was not filed within three years of the date of last payment of compensation. Thus, in either case, the claimant's Review Petition is time barred.

WCJ decision, F.F. Nos. 3–4; at 3–5.