IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Florentina Rusanovschi,         :
                                   : No. 1745 C.D. 2015
               Petitioner    : Submitted: February 5, 2016
                                   :
              v.                :
                                   :
Workers' Compensation Appeal     :
Board (Pennsylvania Hospital of    :
the University of Pennsylvania      :
Health System),                :
                                   :
             Respondent   :


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WOJCIK                      FILED: April 15, 2016


        Florentina Rusanovschi (Claimant) petitions for review of the August 26, 2015 order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of a workers' compensation judge (WCJ) denying Claimant's reinstatement petition. For the reasons that follow, we vacate and remand.

        Claimant worked for Pennsylvania Hospital of the University of Pennsylvania Health System (Employer) as a surgical technician in the open-heart operating room; her duties included setting up tables and handing instruments to physicians. On September 12, 2012, Claimant sustained a work-related injury to her hands. Claimant initially believed that her dermatitis was related to a previously diagnosed latex allergy, but testing later indicated that she had an

allergic reaction to the personal hygiene system (PHS) soap used throughout the hospital. On November 19, 2012, Claimant returned to work with restrictions to avoid contact with the PHS soap and any surfaces that might have residual PHS soap on them.

Thereafter, on December 11, 2012, Employer issued a notice of compensation payable (NCP), which accepted liability for a "dermatitis" type of injury to Claimant's hands and described the injury as "hand dermatitis from latex gloves." Exhibit D-1. The NCP was issued several weeks *after* Dr. Cohn had diagnosed Claimant with contact dermatitis secondary to PHS soap and released her to work with restrictions, by which time Employer was accommodating those restrictions by providing Claimant with baby soap. On or around that same time, the parties also executed a supplemental agreement suspending benefits based on Claimant's return to work in November 2012.

Claimant subsequently filed a reinstatement petition alleging a recurrence of total disability as of April 19, 2013. Employer issued a notice of compensation denial[1] and the matter was assigned to a WCJ.

Before the WCJ, Claimant testified that she had been working for Employer as a surgical technician since 2009. Claimant stated that on September 12, 2012, she developed bubbles on both hands that would bleed when they broke.

_____

[1] We note that where an employer denies liability for compensation, a notice of compensation denial must be forwarded to the employee, with a copy to the Board, within 21 days after the employer has notice or knowledge of the employee's disability. Section 406.1 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of February 8, 1972, P.L. 25, 77 P.S. §717.1. Employer's notice of compensation denial, which referenced the September 12, 2012 work injury, was filed May 8, 2013, approximately six months after Employer issued the NCP accepting liability for the same work injury and executed a supplemental agreement suspending benefits. It appears that the Bureau accepted the notice of compensation denial in lieu of an answer to Claimant's reinstatement petition (Form LIBC-377).

2

She said that she had always worn latex-free and powder-free gloves at Employer's workplace because she previously had been diagnosed with a latex allergy.

Claimant testified that when her symptoms first developed, Employer referred her to Dr. Reese, a Pennsylvania Hospital physician, who restricted her from working and referred her to John Cohn, M.D., for allergy testing. Claimant stated that test results indicated that she was allergic to a form of soap used at the hospital. Dr. Cohn released her to return to work on November 18, 2012, with restrictions that she not use the hospital's soap. Claimant testified that Employer provided her baby soap to use instead, but although she always carried the baby soap with her, she continued to have symptoms.

Claimant stated that she stopped working on April 19, 2013, after a severe outbreak of blisters and bleeding. She said that Employer again referred her to Dr. Reese, who took her off work and continued to treat her. Dr. Reese also recommended that Claimant return to Dr. Cohn. R.R. at 30-31.

Claimant testified that she does not experience any symptoms of dermatitis in her hands while she is not at work. Claimant stated that she has been using regular soap as well as the baby soap that Employer provided and has not had any reactions. Although she could not identify a specific activity that caused a reaction, Claimant believed that her symptoms arose from something that she was doing at work. She described the onset of her symptoms as gradual, with itching and burning that worsened throughout the day followed by an outbreak of bubbles the next morning. Claimant also testified that she would be "scrubbed in" for most of the work day. She said that she was never tested for an allergic reaction to the gloves she was wearing but had no reason to think she was allergic to them.

3

Claimant also offered the deposition testimony of Dr. Cohn, who is board certified in internal medicine, pulmonary medicine, and allergy and immunology. Dr. Cohn testified that he first saw Claimant on October 24, 2012, for a hand rash, which at that time was attributed to a latex allergy and related to gloves she wore in the operating room. He said that the history provided by Claimant included a previously diagnosed allergy to latex, after which she had been wearing polyisoprene powder free gloves. Claimant reported that her current problems began about a week and a half after Employer changed the brand of gloves it used at the hospital. Claimant's hands began to itch, and she was treated with topical and oral steroids by the employee health department. Her problems persisted, despite trying different kinds of gloves. Dr. Cohn concluded that Claimant had contact dermatitis and scheduled a patch test.

Dr. Cohn testified that the patch test revealed a positive reaction to the personal hygiene system used at the hospital, and he diagnosed Claimant with contact dermatitis secondary to PHS soap. He released Claimant to return to work with the restriction that she avoid contact with PHS soap and also with instruments, doorknobs, railings, or any other surfaces that might have residual PHS soap on them. Dr. Cohn explained that Claimant could develop an allergic reaction even if she did not touch PHS with her own hands, adding that PHS soap is used liberally by hospital employees who could leave trace amounts on surfaces sufficient to trigger a reaction in Claimant.

Dr. Cohn said that he saw Claimant next on April 25, 2013, a few days after she experienced a severe outbreak of blisters on her hands. She had been treated with a Medrol Dose pack, which is a systemic and a topical corticosteroid. Claimant told Dr. Cohn that everyone at work was using PHS soap.

4

He did not do additional testing but suggested that Claimant see a dermatologist in New York who has a special interest in contact dermatitis.

Dr. Cohn testified that Claimant could return to work in an environment where PHS is not used. He noted that PHS soap was used throughout Employer's hospital. Dr. Cohn acknowledged that wearing gloves while in the operating room would remove the chance of passive exposure to PHS soap, but he noted that it was not possible to wear them constantly all day.

Employer presented the deposition testimony of Richard Greene, M.D., who is board certified in pediatrics and allergy and immunology. Dr. Greene reviewed Claimant's medical records. When asked his opinion regarding Claimant's condition, Dr. Greene responded: "It's absolutely clear that she had an occupational contact dermatitis." R.R. at 105. Although Dr. Greene repeated his belief that Claimant had an occupational contact dermatitis, he would not offer an opinion as to the cause of that condition and stated that there was not enough information available for him to make a more definitive diagnosis. R.R. at 105-06. Dr. Greene said it was possible that Claimant suffered an allergy from the PHS soap. He stated that it was absolutely possible that Claimant would be affected if she was actively using the soap, but he thought it unlikely that she would be affected by a passive exposure. R.R. at 107. He also believed it was possible that Claimant reacted to a change in the gloves she wore at work, adding that if the components of the glove had been changed, the possibility of reacting to the glove would be more likely. R.R. at 108. Dr. Greene testified that additional testing was necessary in order to identify the contactant, and he believed that if the contactant was identified, Claimant would be able to avoid it. R.R. at 113-14.

5

At the conclusion of his direct testimony, Dr. Greene stated as follows:

Q. Doctor, without knowing what the contactant truly is, are you able to say definitively whether or not she was coming into contact with that contactant solely on the premises of Pennsylvania Hospital?

A. Yes, I think we can safely assume that that's true.

Q. Why, Doctor?

A. Because she is asymptomatic or she has no problem when she is not working.

R.R. at 114.

The WCJ accepted Claimant's testimony as credible to establish that she had an allergic reaction on her hands. He also relied on her testimony to find that, after learning that Claimant was allergic to PHS soap used in the hospital, Employer accommodated her condition by providing a bottle of baby soap, which she also used at home. The WCJ found Dr. Greene's testimony more credible and persuasive than that of Dr. Cohn, and found as follows:

8. Dr. Cohn admitted that Claimant was never tested for all the components contained in the gloves. Furthermore, Dr. Cohn determined that Claimant could return to work if she did not use the personal hygiene system soap. Employer provided Claimant with an alternative soap which she admits she uses at home without problem. This Judge finds Dr. Greene's testimony more persuasive that Claimant suffers from contact dermatitis but has not had adequate testing to rule out other causes besides personal hygiene system soap. Dr. Greene reasons that if the soap caused her symptoms, Claimant's condition should have resolved if she began using the baby soap exclusively, and it did not.

9. Based upon Dr. Greene's credible testimony, Claimant has not proven what agent, whether at home or at work,

6

has caused her to suffer an aggravation of dermatitis of the hands on or about April 19, 2013, nor has Claimant proved that the initial injury altered the chemistry of her hands and that such condition disabled her from performing her job duties on or about that time. Any wage loss had nothing to do with glove dermatitis and there is no medical evidence to show that her hands have become super sensitized since the initial work injury.

WCJ's Findings of Fact Nos. 8-9. The WCJ concluded that "Employer rebutted any presumption of continuing disability related to the acknowledged work injury of allergy to latex gloves. The medical evidence of record only shows that Claimant's dermatitis results from soap or something else." WCJ's Conclusion of Law No. 3. Accordingly, the WCJ denied Claimant's reinstatement petition.

Claimant appealed to the Board. The Board stated that Claimant's acknowledged work injury is hand dermatitis from latex gloves and that Claimant's expert did not testify that her dermatitis was due to latex gloves.[2] Rejecting Claimant's assertion that the WCJ failed to issue a reasoned decision, the Board affirmed.

On appeal to this Court,[3] Claimant argues that the WCJ erred in concluding that she did not meet her burden of proof in this reinstatement

---

[2] Although the WCJ and the Board relied on the description of the work injury in the NCP, hand dermatitis "from latex gloves," we do not address whether such a description is equivalent to a medical diagnosis as that issue has not been raised.

[3] Our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by the evidence. *Milner v. Workers' Compensation Appeal Board (Main Line Endoscopy Ctr.),* 995 A.2d 492, 495 n.2 (Pa. Cmwlth. 2010). "Substantial evidence" is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. *Waldameer Park, Inc. v. Workers' Compensation Appeal Board (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003).

7

proceeding. Claimant also contends that the WCJ failed to issue a reasoned decision.

An employee seeking reinstatement following a suspension of benefits must prove that (1) through no fault of her own, her disability is again adversely affected by the work-related injury, and (2) the disability that gave rise to the original claim continues. *Pieper v. Ametek-Thermox Instruments Div.*, 584 A.2d 301, 304-05 (Pa. 1990). In such cases, the causal connection between the original work-related injury and the disability that gave rise to compensation is presumed. *Id.*

Relying on *St. Mary's Home of Erie v. Workmen's Compensation Appeal Board (Stadtmiller)*, 683 A.2d 1266 (Pa. Cmwlth. 1996), Claimant first argues that the WCJ erred in concluding that she failed to meet her burden of proof.

The claimant in *St. Mary's* worked as a housekeeper. On November 1, 1991, she became disabled due to a work-related low back injury, and she received benefits pursuant to a compensation agreement that described the injury as a "herniated disc L4-L5 aggravated by working as a housekeeper."[4] 683 A.2d at 1267 n.1. In 1993, the employer filed a termination petition, stating that it had recently received medical information reflecting that the claimant's disability and medical expenses on or after November 1, 1991, were not due to any work injury or aggravation of a pre-existing condition. The employer later amended the termination petition and sought to review the parties' agreement, averring that the employer had accepted liability for the original claim based on the reasonable

---

[4] The L4-L5 lumbar vertebrae are in the low back. Stedman's Medical Dictionary, 1710 and Plate 2 (25th ed. 1990).

belief that she suffered a disc herniation as the result of a work incident. The claimant filed answers to both petitions, as well as a petition to review medical treatment.

Before the WCJ, the claimant testified that her back pain began in June 1991 while she was using a wet mop at work. The claimant stated that she eventually sought treatment for her back pain on November 1, 1991, and that she underwent surgery on August 18, 1992. The claimant also testified that she had scoliosis, a pre-existing condition, but no one ever told her that the scoliosis was causing her back pain. In fact, the claimant stated that she had never received any treatment for her scoliosis.

The employer presented the deposition testimony of Louis J. Iorio, M.D., a board-certified orthopedic surgeon who had examined the claimant prior to her surgery. At that time, Dr. Iorio believed that the claimant had a herniated disc at the L5-S1 level, which probably resulted from repetitive heavy lifting at work, and a serious progressive lumboscoliosis condition. Dr. Iorio agreed with the claimant's treating physician that both conditions had to be surgically corrected. However, when Dr. Iorio subsequently reviewed the operative reports, he concluded that the claimant did not have an L5-S1 disc herniation, but was suffering only from the late sequelae of severe kyphoscoliosis.[5] Dr. Iorio also opined that the claimant's pre-operative condition was not related to any work injury.

---

[5] Kyphoscoliosis is kyphosis (a deformity of the spine) combined with scoliosis. Stedman's Medical Dictionary, 830 (25th ed. 1990).

9

The WCJ rejected Dr. Iorio's testimony and found that the claimant suffered a work-related injury to her low back on or about November 1, 1991, and the employer accepted liability for a low back injury aggravated by her working as a housekeeper. The WCJ also stated that *it was unknown whether the low back injury was, in fact, a herniated disc at L5-S1*. Nevertheless, the WCJ found that the claimant was unable to perform her pre-injury job duties as a result of the work-related low back injury and that her medical treatment was causally related to the work injury. Based on those findings, the WCJ concluded that the employer failed to prove that the claimant's work-related disability had ceased; the employer failed to prove that the Agreement for Compensation should be set aside; and the claimant met her burden of proving a causal relationship between her medical treatment and her work injury. Consequently, the WCJ denied the employer's termination and review petitions and granted the claimant's review petition. 683 A.2d at 1268.

The employer appealed to the Board, which affirmed the WCJ's decision. On appeal to this Court, the employer argued that it had accepted liability for a work injury in the nature of a *herniated disc*, and should not be held liable for the medical treatment of the claimant's scoliosis, which was not work-related. In other words, the employer argued that the claimant failed to prove that there was a causal connection between her medical treatment and her work injury.[6] We rejected the employer's argument. Specifically, we noted that

_____

[6] In *Kurtz v. Workers' Compensation Appeal Board (Waynesburg College),* 794 A.2d 443 (Pa. Cmwlth 2002), we explained a claimant's burden to review medical benefits as follows:

> Once a claimant has established that the injury is causally related to his employment, or liability for the injury has been acknowledged by an employer through a NCP, and there has not

**(Footnote continued on next page…)**

Claimant's treating physician and Employer's own medical expert both diagnosed Claimant's low back work injury as a herniated disc. The same doctors agreed that proper treatment of that work injury required surgical correction of Claimant's pre-existing scoliosis. Thus, *but for* the work injury to her low back, Claimant would *not* have needed surgery at that time to mend her scoliosis. In other words, *some* work injury, if not a herniated disc, caused Claimant to need low back surgery on August 18, 1992.

It does not matter that the surgical team discovered during surgery that the pre-surgery diagnosis was wrong, and that Claimant's work injury was *not* a herniated disc but, rather, some *other* low back problem which required a different surgical procedure. The point is that *some* work-related injury precipitated the surgery.

683 A.2d at 1268-69 (emphasis in original). Accordingly, we agreed that the claimant met her burden of proving a causal connection between the original work injury and her medical bills.

---

**(continued…)**

been a termination of benefits, the claimant is not required to continually establish that medical treatment of that compensable injury is causally related because the injury for which the claimant is treating has already been established. Rather, in this regard, it is the employer's burden to establish that medical treatment associated with the injury was unreasonable or unnecessary. If, however, a claimant receives medical treatment for new symptoms that allegedly arise from the compensated injury, and the employer refuses to pay the associated bills, the burden of establishing that the symptoms and treatments are related to the compensable injury turns on whether the connection is **obvious**.

Id. at 447 (citations and footnote omitted). *See also Gens v. Workmen's Compensation Appeal Board (Rehabilitation Hospital of Mechanicsburg)*, 631 A.2d 804 (Pa. Cmwlth. 1993); *Hilton Hotel Corp. v. Workmen's Compensation Appeal Board (Totin)*, 518 A.2d 1316 (Pa. Cmwlth. 1986).

In this case, both medical experts diagnosed Claimant as suffering with contact dermatitis as a result of *a contactant at Employer's hospital*. Indeed, Doctor Greene repeatedly testified that Claimant suffered a "contact dermatitis" injury caused by a contactant in her workplace. As the expert testimony illustrates, the determination that Claimant's contact dermatitis injury was work related does not depend on identifying the specific contactant that caused her symptoms. While Claimant's expert attributed her symptoms to PHS soap and Employer's expert opined that gloves could not be ruled out as a cause, both testified that Claimant developed contact dermatitis as a result of exposure to *some contactant at her workplace*. In accord with *St. Mary's*, we conclude that the fact that the description of the injury is incorrect is not dispositive where the evidence demonstrates that some work-related substance caused Claimant's injury.

Unfortunately, in summarizing and crediting Dr. Greene's testimony, the WCJ made no reference to Dr. Greene's opinion that Claimant was exposed to the contactant solely on the premises of Employer's hospital. R.R. at 114, 121-22. Because the WCJ failed to address this significant portion of Dr. Greene's testimony, we cannot ascertain whether it was overlooked or rejected as not credible. Thus, we agree with Claimant that the WCJ's decision does not satisfy the reasoned decision requirements of Section 422(a) of the Act, which states:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the

12

> workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. §834. We note that while a WCJ may generally disregard the testimony of any witness, even if the testimony is uncontradicted, the WCJ does not have discretion to disregard competent evidence without a reasonable explanation or without specifically discrediting it. *Green v. Workers' Compensation Appeal Board (U.S. Airways)*, 28 A.3d 936, 942 (Pa. Cmwlth. 2011).

Accordingly, we vacate the Board's order and remand this matter for a new decision by the WCJ that satisfies the requirement of section 422(a) of the Act and reflects consideration of all of the uncontradicted, relevant evidence of record.[7]

MICHAEL H. WOJCIK, Judge

---

[7] Assuming, without deciding, that the description of the injury in the NCP is relevant only to contact dermatitis caused by a latex allergy, we recognize that Claimant has not filed a petition to amend the NCP under section 413(a) of the Act, 77 P.S. §§771-772. However, Pennsylvania courts have repeatedly affirmed the precept that the form of a petition does not control when a claimant is entitled to relief. *See*, e.g., *Westinghouse Electric Corp. v. Workers' Compensation Appeal Board (Korach)*, 883 A.2d 579, 590-91 (Pa. 2005); *Penn Beverage Distributing Company v. Workers' Compensation Appeal Board (Rebich)*, 901 A.2d 1097, 1102 n.8 (Pa. Cmwlth. 2006). "It has long been the rule in workmen's compensation cases that the form of the petition is not controlling where the facts warrant relief, and that if a claimant is entitled to any relief under any section of the Act, his petition will be considered as filed under that section." *Long v. Workmen's Compensation Appeal Board*, 505 A.2d 369, 373 (Pa. Cmwlth. 1986).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Florentina Rusanovschi,                          :
                                                 : No. 1745 C.D. 2015
                              Petitioner          :
                                                 :
                     v.                          :
                                                 :
Workers' Compensation Appeal                     :
Board (Pennsylvania Hospital of                  :
the University of Pennsylvania                   :
Health System),                                  :
                                                 :
                              Respondent          :


O R D E R


AND NOW, this 15<u>th</u> day of <u>April</u>, 2016, the order of the Workers'

Compensation Appeal Board, dated August 26, 2015, is vacated and this matter is

remanded for a new decision in accordance with the foregoing opinion.


Jurisdiction relinquished.


MICHAEL H. WOJCIK, Judge