IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Bailey, : 
               Petitioner : 
                :   No. 1442 C.D. 2015
         v. : 
                :   Submitted: November 25, 2015
Workers' Compensation Appeal : 
Board (Commonwealth of PA/ : 
SCI Camp Hill), : 
               Respondent : 

BEFORE:   HONORABLE DAN PELLEGRINI, President Judge[1]
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE JAMES GARDNER COLINS, Senior Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                FILED: April 27, 2016

      John Bailey (Claimant) petitions for review of the July 14, 2015 order of the Workers' Compensation Appeal Board (Board), which affirmed a Workers' Compensation Judge's (WCJ) decision denying Claimant's petition for reinstatement of compensation benefits for failing to meet his burden to prove that he was disabled due to a work-related injury.

**Facts and Procedural History**

      The underlying facts are undisputed and may be summarized as follows. Claimant worked as a Captain for the Department of Corrections (DOC) and was

---

[1] This case was assigned to the opinion writer on or before December 31, 2015, when President Judge Pellegrini assumed the status of senior judge.

issued a notice of compensation payable (NCP) dated September 12, 2008, recognizing a right-knee injury that occurred on March 24, 2007, during his employment with the Commonwealth of Pennsylvania, State Correctional Institution at Camp Hill (Employer). Claimant was diagnosed with a knee sprain and allowed to return to work with restrictions; however, in April 2007, Claimant underwent an MRI that revealed a meniscus tear and, subsequently, surgery was performed to repair his meniscus. Claimant returned to full-duty employment but subsequently suffered additional injuries, the cause of which is disputed, and underwent a total knee replacement in January 2010.

On March 4, 2010, Claimant filed a petition to reinstate compensation benefits seeking to reinstate benefits for the 2007 work injury. Employer filed an answer, denying the material allegations of Claimant's petition. On April 18, 2010, Employer executed an agreement with Claimant (Supplemental Agreement), which described Claimant's injury as a right-knee sprain and provided that:

> Claimant[']s disability recurred 1/14/2010. Accordingly, TTD[2] is reinstated from 1/14/2010 to 4/17/2010. All causally related medical treatment regarding claimant[']s total knee replacement surgery will be paid. Claimant returned to work with no loss in earnings 4/18/2010. Benefits are suspended effective 4/18/2010.

(Reproduced Record (R.R.) at 48a.) By order dated July 28, 2010, a WCJ dismissed Claimant's petition to reinstate benefits as moot because of the Supplemental Agreement.

Claimant returned to full-duty employment following his knee replacement; however, he began experiencing additional problems with his right knee

---

[2] TTD indicates temporary total disability.

2

in November 2010 and was admitted to the hospital with a knee infection. Claimant underwent arthroscopic surgery, wherein a surgeon removed components that had been inserted into Claimant's knee when it was replaced, cleaned them, and cleaned the knee joint itself. Claimant retired from the DOC in February 2011 because of problems he was having with his knee, but was hired for full-time employment as a security officer with Allied Barton Security (Allied) in April 2012 with no work restrictions.

In April 2013, Claimant was diagnosed with another infection and underwent arthroscopic surgery to clean the parts that had been inserted into his knee when it was replaced. Claimant subsequently returned to full-time employment.

On July 16, 2013, Claimant filed a second petition to reinstate compensation benefits, alleging a worsening of condition. Employer filed an answer, denying that Claimant's condition as it related to his work injury had worsened. The matter was assigned to a WCJ, who conducted hearings.

Claimant testified that he worked for Employer as a Corrections Officer Captain and suffered a work-related injury to his right knee on March 24, 2007. Claimant stated that, as a result of the work-related injury, his right knee was replaced in January 2010. Claimant testified that he felt improvement and returned to full-duty work after his knee replacement; however, he began experiencing additional problems with his right knee in November 2010. Claimant explained that he was at work when his knee began to swell, became very tight, and he had extreme difficulty walking. (R.R. at 135a-36a, 151a.)

Claimant further testified that he contacted and sought treatment from John Grandrimo, D.O., the surgeon who performed his knee replacement. Claimant stated that he was admitted to the hospital for a knee infection and underwent

3

arthroscopy surgery in November 2010; specifically, Claimant explained that Dr. Grandrimo removed parts that had been inserted into his knee when it was replaced, cleaned them, and cleaned the knee joint itself. (R.R. at 137a-38a.)

Claimant testified that he retired from the DOC in February 2011 because of problems he was having with his knee. Claimant stated that he did not seek disability retirement nor did any of his doctors advise him to retire. Rather, Claimant explained that he had financial problems, that his leave was exhausted, and that the only way he could support his family was to retire. Claimant noted that Dr. Grandrimo had released Claimant from his care and cleared him to return to work in May 2011. Claimant testified that he was hired for full-time employment as a Security Officer with Allied in April 2012 and noted that he was not placed on any work restrictions related to his right knee. (R.R. at 138a, 141a, 154a-57a.)

Claimant further testified that, in October 2012, he began experiencing discomfort similar to that he experienced in November 2010; specifically, Claimant stated that he suffered from swelling and severe pain in his knee. Claimant noted that he was taking Ibuprofen and icing his knee regularly to deal with the pain. However, in April 2013, Claimant sought treatment from Dr. Grandrimo because he was having extreme difficulty walking. Claimant was again diagnosed with an infection and Dr. Grandrimo performed another surgery on Claimant's knee to clean the parts that had been inserted when his knee was replaced. Claimant testified that he returned to full-time work after approximately eighty-four days because he received notice from Allied that he had exhausted all of his leave under the Family and Medical Leave Act[3] and would be terminated if he did not return to work. (R.R. at 141a-43a, 156a, 159a-60a.)

_____

[3] 29 U.S.C. §§ 2601-2654.

4

Claimant explained that he was transferred to another company, G4 Securities (G4S), when it purchased Allied, but noted that he performed the same duties; specifically, Claimant stated that he patrolled the interior of buildings, checked doors, and performed metal detector observation. Claimant testified that he was also hired to work part time at the York County Prison. Claimant further testified that he currently works part time for York County Prison, passed a physical before he was hired, and is on the full-time list; that is, if a full-time position becomes available he may be considered for the position. Claimant explained that he makes rounds at the prison and is responsible for the care, custody, and control of inmates. Claimant testified that he could perform the full-time job if it was offered, but acknowledged that he still experiences some soreness and stiffness in his knee. Claimant stated that he receives approximately $3,600.00 per month in retirement benefits and, aside from the workers' compensation benefits he received after the initial work injury, he does not receive any type of public assistance. (R.R. at 143a-45a, 155a-59a.)

Claimant further testified that he last saw Dr. Grandrimo in December 2014, that he is prescribed an anti-inflammatory medication to take as needed, and that he takes Ibuprofen for his knee pain. Claimant confirmed that he suffers from diabetes and takes medication to treat that condition, and also stated that he is prescribed medication for high-blood pressure and acid reflux. Claimant acknowledged that he was involved in a motor vehicle accident while riding a bus in 2008. Specifically, Claimant stated that he suffered an impact injury to his right knee, that he hurt his back, fractured a rib, experienced soreness in his shoulders, and that his arms were covered with abrasions and bruises. (R.R. at 145a-49a, 160a-61a.)

5

Dr. Grandrimo, a board-certified orthopedic surgeon, testified that Claimant suffered a right-knee injury in March 2007, when his knee twisted and he felt a pop and a sharp pain. Dr. Grandrimo said that he performed surgery on Claimant's right knee to repair a tear of the medial meniscus in April 2007. Dr. Grandrimo further testified that Claimant does not require any medical treatment for his 2007 work injury and confirmed that Claimant is currently cleared to work without restriction; however, Dr. Grandrimo could not confirm whether Claimant had fully recovered from his 2007 work injury because Claimant had received injections for arthritis in his knee. (R.R. at 96a-97a.)

Dr. Grandrimo stated that Claimant had been involved in a bus accident in May 2008 where he was thrown from his seat when the bus overturned, thrown into the air a second time when the bus rolled onto its side, and landed against the windows before several children landed on top of him. Dr. Grandrimo testified that Claimant reported right-knee pain after the accident and that an MRI indicated that Claimant suffered a meniscus tear in his right knee. He stated that he believed the meniscus tear was new and not a recurrent tear from the previous injury, but noted that the auto accident could have aggravated the previous condition of Claimant's right knee. (R.R. at 97a-100a.)

Dr. Grandrimo further testified that he performed Claimant's knee replacement surgery in January 2010 because of arthritic issues and noted that Claimant had suffered complications from the surgery. Specifically, Dr. Grandrimo stated that he discovered that Claimant had developed an infection in his right knee and had to undergo a "knee washout," a procedure where an incision is made into the joint, an antibiotic solution is used to clear out the infection, and the joint is drained. Dr. Grandrimo explained that Claimant's infection was a hematogenous infection

6

which occurs when the body reacts to a hematoma or blood clot that develops after surgery as a foreign agent. Dr. Grandrimo further explained that a hematogenous infection is something that occurs in individuals who have total joint replacements. He noted that a hematogenous infection is rare, but acknowledged that it happens. Dr. Grandrimo opined that Claimant's knee infection was a result of his knee replacement. Dr. Grandrimo also noted that Claimant's diabetes makes him more prone to infections, especially in the lower extremities. (R.R. at 87a-90a, 100a, 113a-15a.)

Dr. Grandrimo testified that he treated Claimant in April 2013 for another infection in his right knee, performed the same "knee washout" procedure, and cleared Claimant to return to full-duty work in June 2013. He acknowledged that Claimant currently has no working restrictions nor does he require any additional medical treatment for the knee replacement, but would not opine whether Claimant had fully recovered from his knee replacement because "there's always a chance that something can happen." (R.R. at 91a-95a.)

Dr. Grandrimo acknowledged that he had never treated Claimant prior to the 2007 work injury, nor did he review any of Claimant's prior medical records. He conceded that his understanding of Claimant's condition was based upon his physical examination and Claimant's subjective history. After reviewing the relevant records, Dr. Grandrimo confirmed that Claimant had suffered an injury to his right knee in 1990, that he had had four arthroscopies done, and that he had complained of right knee pain in June 1997. Dr. Grandrimo acknowledged that Claimant continued to complain of right knee pain, that he reported an accident where he fell down the steps at home, that a fifth knee surgery was performed, and that the postoperative diagnosis was Grade 3 chondromalacia. Dr. Grandrimo explained that

7

chondromalacia results when damage or a change to the cartilage occurs and noted that that change is graded on a scale; Grade 1 is mild and Grade 4 is severe. (R.R. at 101a-106a.)

Dr. Grandrimo conceded that Claimant had problems with his right knee before the 2007 work injury; but, he testified that he believed the work injury exacerbated those problems. However, Dr. Grandrimo noted that it is also possible that the bus injury could have aggravated Claimant's condition. Dr. Grandrimo testified that both infections that Claimant developed were related to the 2010 knee replacement surgery and were not related to the 2007 work injury, but could have been an indirect result of the 2007 work injury. (R.R. at 106a-07a.)

Lawrence Pollack, D.O., a board-certified orthopedic surgeon, testified that he performed an independent medical examination (IME) of Claimant on November 19, 2013. Dr. Pollack stated that he reviewed Claimant's medical records and that he combined that information with the information Claimant provided to develop an overall claim history. According to Dr. Pollack, Claimant injured his right knee in February 1990 when he slipped and fell down stairs while he was working as a corrections officer. He testified that Claimant was initially treated with an immobilizer and medication but continued to be symptomatic. Ultimately, Claimant had to undergo an arthroscopy of his right knee in January 1993, but returned to regular-duty work thereafter. Dr. Pollack further testified that surgery was recommended after Claimant complained of pain when he slipped on black ice and suffered another right-knee injury in December 1995. Dr. Pollack confirmed that Claimant underwent an arthroscopy with osteochondral grafting on his right knee in July 1997, that he was cleared to return to work in a limited capacity in February 1998, and cleared to return without restrictions in April 1998. Dr. Pollack noted that

Claimant also sought treatment in June 2001 for injuries he sustained to both of his knees when he fell out of a chair. (R.R. at 175a-179a.)

Dr. Pollack confirmed that Claimant had suffered a work injury in March 2007 when he stepped on a landing, pivoted, and felt a popping sensation in his right knee. Dr. Pollack stated that Claimant was originally diagnosed with a knee sprain and allowed to return to work with restrictions. He testified that Claimant underwent an MRI of his right knee in April 2007 which revealed evidence of osteochondritis dissecans, three-compartment degenerative arthritis, and a medial meniscus tear. Dr. Pollack further testified that Claimant underwent x-rays which revealed degenerative arthritis of his right knee and an arthroscopy was recommended and performed. Dr. Pollack noted that Claimant was allowed to return to work in June 2007, but stated that Claimant experienced arthritic symptoms in his knee and noted that injections were recommended. Additionally, Dr. Pollack stated that Claimant complained of knee pain in September 2007. He also noted that Claimant fell on black ice and injured both of his knees and lower back in December 2007, was diagnosed with a knee strain and lumbar strain, and was advised to undergo another MRI of his knee. The MRI revealed evidence of three-compartment degenerative arthritis, osteochondral defects, chondromalacia patella, and degenerative changes of his meniscus. (R.R. at 180a-82a.)

Dr. Pollack testified that he also performed an IME of Claimant in May 2008, and that Claimant complained of right-knee pain that was similar to pain he had experienced prior to his 2007 work injury. Dr. Pollack stated that Claimant advised him that he had been symptomatic since 1990, continued to have ongoing chronic pain in his right knee, and that he had undergone treatment. Dr. Pollack opined that, at that time, Claimant was fully recovered from his 2007 work injury. (R.R. at 183a.)

9

Dr. Pollack further testified that Claimant had been in a bus accident in May 2008 and noted that Claimant was airlifted to the hospital due to his injuries. Dr. Pollack stated that, prior to the bus accident, Claimant was not receiving any treatment for his right knee and testified that Claimant's right knee appeared to be improving before the accident occurred. However, after the bus accident, Dr. Pollack testified that Claimant reported immediate pain, had difficulty walking, and that Claimant's knee pain had worsened. He further testified that Claimant underwent another MRI on his right knee that revealed evidence of extensive degenerative changes, mild bone bruising, and a medial meniscal tear. Dr. Pollack stated that Claimant underwent an arthroscopy on his right knee on November 20, 2008. He explained that Claimant performed physical therapy and returned to work without restrictions on January 12, 2009. However, Dr. Pollack noted that Claimant was advised to undergo a series of injections for the degenerative arthritis in his knees. (R.R. at 184a-87a.)

Dr. Pollack stated that Dr. Grandrimo re-evaluated Claimant on November 4, 2009, because Claimant continued to complain of right-knee pain. At the time of the examination, Dr. Grandrimo recommended a total right-knee arthroplasty and, on January 14, 2010, the total knee replacement was performed. Dr. Pollack confirmed that Claimant was cleared to return to his regular-duty job, but noted that he experienced continued problems and was diagnosed with a right-knee infection on November 11, 2010. Dr. Pollack noted that there was no evidence of any new injury or trauma to the knee, that Claimant was treated by the infectious

10

disease department, and that Claimant did undergo another procedure[4] on his right knee and was subsequently prescribed antibiotics. (R.R. at 188a-89a.)

Dr. Pollack confirmed that Claimant retired from DOC in February 2011 and, after his retirement, worked for a security company for approximately eighteen months. He noted that Claimant experienced increasing pain in his right knee, that Dr. Grandrimo performed a second irrigation and debridement of the right knee with a polyethylene exchange, and that Claimant was again prescribed antibiotics. Dr. Pollack testified that Dr. Grandrimo cleared Claimant to return to work as a security guard in June 2013 and confirmed that Claimant started working full time at York County Prison in October 2013. (R.R. at 190a-91a.)

Dr. Pollack recognized that Claimant has a history of work-related injuries to his right knee. However, Dr. Pollack testified that the injury that occurred due to the bus accident caused Claimant to experience pain in his right knee and opined that all the treatment following the bus accident was directly related to the bus accident, not the 2007 work injury. He further opined that the infections Claimant suffered were directly related to the total knee replacement and were in no way related to the 2007 work injury. Dr. Pollack testified that the 2007 work injury would not have prevented Claimant from performing his regular-duty job with Employer and concluded that Claimant made a full and complete recovery from the 2007 work injury. (R.R. at 194a-198a, 201a-02a.)

On July 21, 2014, the WCJ issued an order denying Claimant's petition to reinstate compensation benefits. The WCJ found Claimant's testimony regarding his subjective symptoms credible; however, he noted that the case must be decided by

---

[4] Dr. Pollack described this procedure as a "debridement of his right knee with irrigation and a polyethylene exchange of his right knee." (R.R. at 189a.)

11

expert testimony and concluded that Dr. Pollack's testimony was more credible than Dr. Grandrimo's because: Dr. Pollack had access to and reviewed all of Claimant's preinjury and post-injury medical records whereas Dr. Grandrimo's understanding of Claimant's condition was based only upon his physical examination and Claimant's subjective history; Dr. Grandrimo's opinion failed to adequately address Claimant's preinjury right knee complaints as well as the post-injury bus accident; and the "totality of the evidence is more consistent with a number of factors/injuries playing a role in the arthritic condition that led to the 2010 knee replacement, and with the most recent injury, the May 19, 2008 bus accident causing the most significant aggravation of the condition." (WCJ Finding of Fact No. 78.) The WCJ found that Claimant's work-related disability ceased on or after April 18, 2010, the date his benefits were suspended pursuant to the Supplemental Agreement, and concluded that the surgeries and other medical treatment rendered after that date were not related to his 2007 work injury. (WCJ Finding of Fact No. 79.) Accordingly, the WCJ determined that Claimant failed to satisfy his burden that he was again disabled as a result of the 2007 work injury.

Claimant appealed to the Board, arguing that the WCJ erred when he determined that Claimant's knee replacement was not related to the 2007 work injury because, pursuant to the Supplemental Agreement, the knee replacement was part of the work injury and, consequently, the doctrine of res judicata precluded Employer from contesting the causal connection between the 2007 work injury and the total knee replacement. The Board affirmed the WCJ, reasoning that the testimony of Employer's medical expert attributed Claimant's knee replacement to arthritic issues and, although Employer agreed to pay for the knee replacement, the description of the injury in the Supplemental Agreement did not include arthritis or aggravation of pre-

12

existing arthritis. Accordingly, the Board concluded that Employer was not precluded from contesting the causal connection between Claimant's 2007 work-related knee sprain and the knee replacement.

On appeal to this Court,[5] Claimant reiterates his arguments before the Board. Claimant asserts that the WCJ erred when he denied Claimant's reinstatement petition because, pursuant to the Supplemental Agreement and the WCJ's 2010 decision, the causal relationship between Claimant's 2007 work injury and subsequent knee replacement was settled. More specifically, Claimant argues that res judicata bars Employer from contesting the causal relationship between the knee replacement and the 2007 work injury and also argues that collateral estoppel bars Employer from asserting that Claimant's knee replacement was not a recurrence of his 2007 work injury.

## Discussion

A claimant seeking to reinstate workers' compensation benefits following a suspension of benefits must prove that the work-related injury caused his or her present disability, i.e., loss of earning power. *Trumbull v. Workmen's Compensation Appeal Board (Helen Mining Company)*, 683 A.2d 342, 345 (Pa. Cmwlth. 1996).

Here, Claimant's expert, Dr. Grandrimo, testified that Claimant suffered from arthritis before his 2007 work injury. (R.R. at 16a.) He also stated that, after he performed the surgery on Claimant's right knee in 2007, he recommended that

---

[5] Our standard of review in workers' compensation appeals is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. *Fruehauf Trailer Corporation v. Workers' Compensation Appeal Board (Barnhart),* 784 A.2d 874, 876 n.2 (Pa. Cmwlth. 2001).

Claimant undergo a series of injections to treat his degenerative arthritis. (R.R. at 10a-11a.) Dr. Grandrimo further testified that he performed Claimant's total knee replacement in 2010 because of arthritic issues. (R.R. at 100a.) Similarly, Employer's expert, Dr. Pollack, testified that he performed an IME of Claimant in May 2008 and opined that Claimant had fully recovered from his 2007 work injury. (R.R. at 183a, 195a-96a.) He further testified that "all the subsequent treatment that [Claimant] sustained following that bus accident is directly related to that bus accident and not related to any work injury." (R.R. at 195a-96a.) Notwithstanding the WCJ's credibility determinations, both experts agreed that the 2007 work injury was not the cause of Claimant's total knee replacement. Therefore, Claimant failed to meet his burden and establish that the 2007 work injury caused his current disability.

Nevertheless, Claimant argues that the Supplemental Agreement settled the issue of causation and that Employer is estopped from contesting the causal relationship between Claimant's 2007 work injury and his 2010 total knee replacement. Claimant argues that the Employer acknowledged via the Supplemental Agreement that Claimant's disability had recurred and agreed to pay for all medical treatment causally related to the total knee replacement and that Employer cannot now use its expert's favorable testimony as a basis to modify its agreement. Claimant essentially argues that once Employer agreed to pay for his total knee replacement and all causally related treatment by way of the Supplemental Agreement, Employer is precluded from denying that Claimant's current disability is work related. However, this Court has held that a voluntary agreement to pay medical bills does not constitute an admission of liability. *Bailey v. Workers' Compensation Appeal Board (Abex Corp.)*, 717 A.2d 17, 19 (Pa. Cmwlth. 1998) (en banc). Moreover, this Court

14

has declined to extend the principle of estoppel to supplemental agreements. *Myers v. Workers' Compensation Appeal Board (Family Heritage Restaurant)*, 728 A.2d 1021, 1023-24 (Pa. Cmwlth. 1999). Therefore, the burden remained with Claimant to prove that the 2007 work injury caused his current disability, which he failed to do.

Thus, we conclude that the Board did not err when it determined that Employer was not prohibited from contesting the causal relationship between Claimant's 2007 work injury and the 2010 knee replacement.

Accordingly, the Board's order is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Bailey,                                :
                    Petitioner               :
                                             :    No. 1442 C.D. 2015
          v.                                 :
                                             :
Workers' Compensation  Appeal                :
Board (Commonwealth of PA/                   :
SCI Camp Hill),                              :
                    Respondent               :

## *ORDER*

AND NOW, this 27th day of April, 2016, the July 14, 2015 order of the Workers' Compensation Appeal Board is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge